92 Cal.Rptr.2d 648 (2000)
78 Cal.App.4th 191
In re LEVI U., a Person Coming Under the Juvenile Court Law.
Butte County Children's Services Division, Plaintiff and Respondent,
v.
Robin W., Defendant and Appellant.
No. C032196.
Court of Appeal, Third District.
February 4, 2000.
*649 Andrea L. McCann, by appointment under the Central California Appellate Program, Roseville, for Appellant.
Susan Minasian, Oroville, Butte County Counsel, Robert A. Glusman and Kimberly Merrifield, Chico, for Respondent.
DAVIS, J.
Robin W. (appellant), the mother of Levi (the minor), appeals from orders of the juvenile court adjudging the minor a dependent child of the court and denying her reunification services. (Welf. & Inst. Code, §§ 360, subd. (d), 395; further undesignated statutory references are to the Welfare and Institutions Code.) Appellant contends the Butte County Children's Services Division (CSD) violated the notice requirements of the Indian Child Welfare Act (the Act). (25 U.S.C. § 1901 et seq.) Appellant also claims the court abused its discretion in denying her reunification services, violating her due process rights. We disagree with each of those contentions and shall affirm the orders.

FACTUAL AND PROCEDURAL
BACKGROUND
On January 7, 1999, CSD filed a section 300 petition on behalf of the 10-day-old minor. That petition alleged appellant had substance abuse and mental health problems "dat[ing] back to at least 1991." According to the petition, on January 5, 1999, appellant tested positive for the presence of methamphetamine and marijuana in her system.
According to the detention hearing report, in 1990 CSD detained a sibling of Levi's, Megan, after she was born testing positive for illegal drugs in her system. Appellant received reunification services in that case. Megan's father later obtained *650 custody of her. In 1992 CSD detained Hailey, another sibling. Appellant had been arrested on undisclosed charges. Hailey's father obtained custody of her. In 1994 CSD detained Ethan, after he was born testing positive for illegal drugs in his system. Ethan was adopted in 1997.
In CSD's report prepared for the jurisdiction and disposition hearings, the social worker noted that the Act may apply to the proceedings. The paternal grandmother had stated she might have Indian ancestry on her mother's side of the family. However, the grandmother also reported that her mother, who was born on a reservation in Oklahoma, was deceased and she did not know to what tribe her mother may have belonged.
The father of the minor advised CSD that the minor's paternal grandmother had told him that her father was one-sixteenth Indian but that her mother had no Indian ancestry. CSD notified the Bureau of Indian Affairs (BIA) of the possibility the minor might be an Indian child. The record contains no evidence that CSD ever received a response from BIA.
The jurisdiction and disposition hearing report contains evidence that appellant admitted she used methamphetamine on January 4, 1999, and tested positive for illegal drugs in her system, as alleged in the section 300 petition. Appellant told the social worker that she began using illegal drugs in approximately 1987. According to the report, it did not appear that appellant ever had sought treatment for her substance abuse. The report also recited that appellant tested positive for marijuana on January 8, 1999, and also tested positive for codeine on February 2, 1999. She had negative test results on four other occasions.
The report recommended no reunification services for appellant. According to the social worker, appellant had an "extensive history of abusive and chronic use of drugs and has failed or refused to comply with a program of drug treatment in the case plan on two prior occasions...." The social worker also opined that, "for a period of at least ten years [appellant's] judgment has been impaired by substance abuse and mental illness."
At the March 8, 1999 disposition hearing, appellant admitted she had a lengthy history of substance abuse. However, recently appellant had entered her first drug treatment program, from which she believed she was benefiting. Appellant told the juvenile court she had been clean and sober for 64 days. Appellant also was attending Narcotics Anonymous sessions. According to appellant, her positive test for codeine was the result of a lawful prescription she had obtained.
At the conclusion of the disposition hearing, the juvenile court denied appellant reunification services pursuant to section 361.5, subdivision (b)(12). The court rejected appellant's argument that the record contained no evidence appellant had resisted drug treatment during the past three years. According to the court, from appellant's previous history, it inferred that she needed drug treatment. The court believed that, by failing to engage in drug treatment until recently, appellant had "resisted" treatment, within the meaning of the statute. The court concluded that it would not be in the best interests of the minor to offer appellant reunification services.

DISCUSSION

I
Appellant contends "[t]he record shows that [the minor] has Indian heritage but fails to show that proper notice was given under the ... Act...." According to appellant, "[a] conclusory statement in the social worker's report ... that notice was sent to [BIA] is not sufficient." Appellant suggests the Act requires evidence of the actual notice sent, proof of service of the notice, and a response from BIA. Appellant argues the violations of the Act prejudiced *651 her, for she was denied the special benefits provided by the Act.
In 1978, Congress passed the Act, which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children "in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902; Mississippi Choctaw Indian Band v. Holyfield (1989) 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29.)
To effectuate the purposes of the Act, "child custody proceeding[s]" (25 U.S.C. § 1903(1)) involving, among other proceedings, the "foster care placement" of an Indian child, are subject to special federal procedures (25 U.S.C. § 1903(1)(i)-(iv)). A foster care placement includes "any action removing an Indian child from its parent ... for temporary placement in a foster home ... where the parent ... cannot have the child returned upon demand, but where parental rights have not been terminated." (25 U.S.C. § 1903(1)(i).)
Among the procedural safeguards imposed by the Act is the provision of notice to various parties. Section 1912(a) provides as follows: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (Original italics.)
The Act provides for invalidation of a foster care placement proceeding for violation of the notice provision in an action brought by the Indian child, parent, Indian custodian, or the Indian child's tribe. (25 U.S.C. § 1914.) The Act also contains various evidentiary and other requirements which may be different from state law and procedure. (25 U.S.C. §§ 1912(d), (f), 1915.)
A major purpose of the Act is to protect "... Indian children who are members of or are eligible for membership in an Indian tribe." (§ 1901(3).) For purposes of the Act, "`Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (§ 1903(4).)
In support of her claims, appellant relies in part on In re Kahlen W. (1991) 233 Cal.App.3d 1414, 285 Cal.Rptr. 507. In that case, the court stated: "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies. Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by the Act would become meaningless. [Citation.]" (Id. at p. 1421, 285 Cal.Rptr. 507.)
In Kahlen W., supra, a social services employee spoke with three different groups of Miwok Indians, attempting to determine the minor's status. In granting *652 the writ sought by the mother of the minor, the appellate court held the department had failed to notify the tribe of its right to intervene in the proceedings, as required by the Act. (233 Cal.App.3d at pp. 1418, 1420, 1424, 1426, 285 Cal.Rptr. 507.)
The court rejected the department's contention that the record showed substantial compliance with the notice provisions of the Act. It noted that all pertinent authority plainly required "actual notice to the tribe of both the proceedings and of the right to intervene." (In re Kahlen W., supra, 233 Cal.App.3d at pp. 1421, 1422, 285 Cal.Rptr. 507; original italics.) Mere "`awareness'" of the proceedings is not sufficient under the Act. (Id. at p. 1422, 285 Cal.Rptr. 507.)
Kahlen W., supra, emphasized notice is mandatory, and that ordinarily failure in the juvenile court to secure compliance with the Act's notice provisions is prejudicial error. The only exceptions lie in situations where "the tribe has participated in the proceedings or expressly indicated [it has] no interest in the proceedings." (233 Cal.App.3d at p. 1424, 285 Cal.Rptr. 507; but see In re Junious M. (1983) 144 Cal.App.3d 786, 794, fn. 8, 193 Cal.Rptr. 40.)
The Kahlen W. court rejected a suggestion by the department that its noncompliance with the notice provisions of the Act was a result of the mother's failure to cooperate by not providing the department with the roll number and by not timely communicating her ancestry. (In re Kahlen W., supra, 233 Cal.App.3d at p. 1424, 285 Cal.Rptr. 507.) As the court pointed out, the Act is intended to protect the interests of the tribe as well as those of the minor's parents. (Id. at p. 1425, 285 Cal.Rptr. 507.) Moreover, the minor is entitled to the protection of the Act irrespective of the actions of the parents. (Ibid.) Finally, the court rejected the claim that by her silence the mother waived her rights under the Act. (Ibid.)
California Rules of Court, rule 1439(f) [further references to rules are to the California Rules of Court] provides in part: "(3) Notice shall be sent to all tribes of which the child may be a member or eligible for membership, [¶] (4) If the identity or location of the parent or Indian custodian or the tribe cannot be determined, notice shall be sent to the specified office of the Secretary of the Interior, which has 15 days to provide notice as required, [¶] (5) Notice shall be sent whenever there is reason to believe the child may be an Indian child, and for every hearing thereafter unless and until it is determined that the child is not an Indian child."
Rule 1439(g) provides in part: "Determination of tribal membership or eligibility for membership is made exclusively by the tribe. [¶] A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive."
In this case, CSD obtained information suggesting there was Indian heritage in appellant's family. Doubtless hoping to receive assistance in obtaining further information, CSD contacted BIA early on in the proceedings. Unfortunately, as the record suggests, CSD received no response from BIA. Thus, with the information it possessed, CSD did precisely what it was required to do under section 1912(a) of the Act and rule 1439(f)(4) in a situation where it did not know the identity of the tribe: CSD sent notice to BIA. Contrary to appellant's assertion, there is no requirement that CSD demonstrate it did anything more than send notice to BIA. (§ 1912(a).)
As the Act makes clear, its provisions apply only to an "Indian child," defined by the Act as one who is eligible for membership in a tribe and is the child of a member of a tribe. (§ 1903(4).) In this case, the lack of any response from BIA, and the absence of any communication sent to CSD by a tribe, were tantamount to determinations that the minor was not an "Indian child" within the meaning of the Act. More specifically, the lack of any information suggesting anyone in the family had a specific tribal affiliation constituted a determination *653 that neither appellant nor the minor was eligible to become a tribal member. Presumably, if it had been otherwise, BIA or someone in the family would have proffered the name of a tribe. As we have seen, such a determination is conclusive. (In re Junious M., supra, 144 Cal.App.3d at p. 793,193 Cal.Rptr. 40.)
Unless the juvenile court has some further basis on which to predicate the belief a child is an Indian under the Act, the court is not required to make further inquiry. (See In re Junious M., supra, at p. 793, 193 Cal.Rptr. 40.) One circumstance under which a court would have reason to believe a child may be Indian includes the receipt of information by a party to the case suggesting the child is Indian. (Ibid.) Here, apart from the rather vague information provided by family members, the record contained no basis whatever for continuing to assume the minor must be an Indian child within the meaning of the Act.
Although in the first instance it is the duty of the juvenile court to attempt to ascertain the identity of one's claimed tribal affiliation, if appellant had additional information suggesting the minor was a member of a particular tribe, or if she had evidence indicating the minor was eligible for membership in one such tribe, then appellant should have tendered that information to the court. Neither the Act nor the various rules, regulations, and case law interpreting it require CSD or the juvenile court to cast about, attempting to learn the names of possible tribal units to which to send notices, or to make further inquiry with BIA.
We conclude the juvenile court and CSD complied with the notice requirements of the Act. In light of the lack of response by BIA to the notices, neither the court nor CSD had any further obligations under the Act. The reason for that conclusion is that there was no showing the minor was an Indian child under the Act.
In sum, since the Act did not apply, the court was not obliged to apply its various provisions, including its evidentiary requirements, special services or placement preference provisions, to this proceeding. Moreover, the court was not even required to make an express determination whether the Act applied to the proceedings. Here, it is apparent the court found implicitly the Act was inapplicable. In that determination, it was correct. There was no violation of the notice provisions of the Act or the rules of court.

II
Appellant claims the denial by the juvenile court of reunification services to her based on her drug abuse history prior to 1994 was an abuse of discretion and a violation of her due process rights. According to appellant, the only evidence contained in the record that she has a chronic drug abuse problem covers the period from 1987-1994. Moreover, she argues, there is no evidence that she resisted drug treatment, within the meaning of section 361.5, subdivision (b)(12), from 1996 to the present. Noting she had entered drug treatment recently and was doing well, appellant argues her current parenting skills are such that reunification with the minor is possible, and she has the ability to benefit from services. Finally, appellant contends the application of subdivision (b)(12) of section 361.5 to her is unconstitutional under due process principles as applied to her; appellant asserts the denial of services is based on an "unproved presumption that [she] suffered extensive, chronic, drug use for which she should have sought treatment during the last three years...."
Section 361.5, subdivision (b)(12) states that reunification services need not be provided to a parent when the juvenile court finds by clear and convincing evidence the parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior treatment for this problem during a three-year period immediately *654 prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."
Section 361.5, subdivision (c) states in part: "The court shall not order reunification for a parent ... described in paragraph ... 12 ... of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interests of the child."
These statutes reflect a legislative determination that an attempt to facilitate reunification between a parent and child generally is not in the minor's best interests when the parent is shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse. (Cf. In re Baby Boy H (1998) 63 Cal.App.4th 470, 474, 73 Cal.Rptr.2d 793.) In effect, the Legislature has recognized that, under those circumstances, "it may be fruitless to provide reunification services...." (In re Rebecca H. (1991) 227 Cal.App.3d 825, 837, 278 Cal.Rptr. 185.)
Citing a lack of evidence of a recent drug problem, and recent attempts to improve her situation, appellant claims she did not meet the statutory prerequisites to denial of services based on chronic drug abuse. She is wrong.
Within the meaning of section 361.5, subdivision (b)(12), a parent has "resisted prior treatment" for chronic use of drugs when the parent has participated in a substance abuse treatment program but continues to abuse illicit drugs, or when the parent has refused to participate in a program. (Karen S. v. Superior Court (1999) 69 Cal.App.4th 1006, 1008, 1009-1011, 81 Cal.Rptr.2d 858; Randi R. v. Superior Court (1998) 64 Cal.App.4th 67, 73, 74 Cal.Rptr.2d 770 [completion of drug treatment program but "failure to maintain any kind of long-term sobriety must be considered resistance to treatment"]; Laura B. v. Superior Court (1998) 68 Cal. App.4th 776, 780, 80 Cal.Rptr.2d 472 [proof of resistance to treatment may "come in the form of resumption of regular drug use after a period of sobriety"].)
Such is the case here. Appellant has a history of chronic drug abuse, including methamphetamine and marijuana. By her own admission, appellant continued to use illegal drugs as recently as January 4, 1999. Moreover, according to her testimony, as of March 1999, appellant had been drug-free for a period of only slightly more than two months. Most critically, appellant had never participated in drug treatment, even though her long record of substance abuse warranted the necessity for such treatment. As we said in Karen S. v. Superior Court, supra, at page 1010, 81 Cal.Rptr.2d 858, "a parent can actively resist treatment for drug or alcohol abuse by refusing to attend a program ..." That is precisely what happened in this case. Accordingly, under these circumstances, since the record supports the finding that appellant "resisted prior treatment" for her chronic drug abuse, the juvenile court properly applied section 361.5, subdivision (b)(12) to deny her reunification services.
We also reject appellant's claim that subdivision (b)(12) of section 361.5 denies her due process of law. First, she failed to tender such a claim in the juvenile court. (Cf. Hale v. Morgan (1978) 22 Cal.3d 388, 394, 149 Cal.Rptr. 375, 584 P.2d 512.) Further, other courts have rejected virtually identical challenges to similar statutes. (See In re Baby Boy H., supra, 63 Cal.App.4th at pp. 477-478, 73 Cal.Rptr.2d 793 [§ 361.5, subd. (b)(10)]; In re Christina A. (1989) 213 Cal.App.3d 1073, 1079, 261 Cal.Rptr. 903 [§ 361.5, subd. (b)(2)].) For the reasons expressed in those decisions, we perceive no constitutional infirmity in subdivision (b)(12) of section 361.5.

*655 DISPOSITION
The orders are affirmed.
SIMS, Acting P.J., and CALLAHAN, J., concur.