6 Cal.Rptr.3d 205 (2003)
113 Cal.App.4th 166
In re KARLA C., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Karl C. et al., Defendants and Appellants.
Nos. D042048, D042060
Court of Appeal, Fourth District, Division One
November 10, 2003
*207 Joseph T. Tavano, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant Karl C.
Mary Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant Roberta C.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.
Suzanne Evans, under appointment by the Court of Appeal, San Diego, for minor.
*206 McCONNELL, P.J.
In this consolidated matter, Karl C. and Roberta C. appeal the order declaring their daughter, Karla C., a dependent of the juvenile court under Welfare and Institutions Code[1] section 300, subdivision (b), and removing her from parental custody. The parents contend the order must be reversed because the court's finding the notice requirements of the Indian Child Welfare Act (the ICWA) (25 U.S.C. § 1901 et seq.) were satisfied is unsupported by the evidence. Particularly, the parents complain that although the evidence shows the San Diego County Health and Human Services Agency (the Agency) sent some type of notice to the Indian tribe in question, there is no evidence of the notice's contents because the Agency did not file a copy of it with the court.
We join the weight of authority in holding the ICWA notice must be filed with the court. Moreover, here the error may not be deemed harmless as there is no suggestion in the appellate record that the notice sent to the tribe contained required information. Accordingly, we reverse the order with directions.

FACTUAL AND PROCEDURAL BACKGROUND
In January 2003[2] Roberta, Karl and six-week-old Karla were living in a hotel. A police officer went to their room in response to a domestic violence report. Roberta told the officer she and Karl had been on a several-day methamphetamine binge during which physical violence occurred. The officer took Karla into protective custody, and on January 31 the Agency filed a petition on her behalf under section 300, subdivision (b), naming Karl as the alleged father.
In a paternity questionnaire, Karl stated he may have American Indian heritage. At the February 4 detention hearing, Karl advised the court his mother told him he had some Blackfeet Indian heritage,[3] and he would "seek to get more information in that regard." The court ordered paternity testing for Karl on February 7, ordered Roberta to attend the Substance Abuse Recovery Management System (SARMS) program, and ordered the Agency to notify the Blackfeet Tribe of the proceedings.
Karl missed his February 7 appointment for paternity testing. On February 25, the court ordered him to submit to paternity testing the following day. The court also set a contested jurisdiction and disposition hearing for March 18.
The court conducted a settlement conference on March 13, at which time Roberta chose to proceed to trial by submitting the jurisdiction and disposition issues on *208 the Agency's reports. Karl requested a continuance of the matter until the results of his paternity testing were available so his status could be changed from alleged father and he would have standing to participate. The Agency opposed a continuance and advised the court the test results would not be available for several more weeks. The court denied Karl's request, explaining that if his paternity were established it would set a special hearing and he could petition for modification under section 388.
In its report for the jurisdiction and disposition hearing, the Agency noted it sent notice of the proceedings to the Bureau of Indian Affairs (the Bureau) in Sacramento and the Blackfeet Tribal Business Council (the Council) in Montana. Attached to the report are certified mail receipts showing the Bureau and the Council received the notices; the notices, however, are not attached to the report. The record also includes a form response from the Bureau stating it had "[i]nsufficient information identifying a federally recognized tribe," and "[i]t is important to be able to trace back to the year 1900 with names, birth dates and/or birthplaces of ancestors to help in establishing a biological link with the original ancestral tribal member(s)." The Council did not respond. Based on this evidence, and Karla's counsel's oral statement the "tribe was noticed,"[4] the court found the ICWA inapplicable.
The Agency's report also stated neither parent showed any interest in visiting Karla. Further, Karl was uncooperative with the social worker and believed he needed no services, and Roberta tested positive for drugs and was dropped from the SARMS program for failing to keep in contact. Although SARMS was willing to admit Roberta to a residency program, she instead intended to live with her mother who also had a drug problem.
The court found the allegations of the petition true by clear and convincing evidence, sustained the petition, declared Karla a dependent child and removed her from Roberta's custody. The court ordered Roberta to attend SARMS and otherwise comply with her case plan. Further, the court gave the Agency discretion to allow overnight visitation between Roberta and Karla, or initiate a 60-day trial visit between them, contingent on the concurrence of Karla's counsel and an affidavit of Roberta's service provider regarding her ability to protect the child. The court also ordered that a special hearing be set when the paternity test results were in, and vacated the contested jurisdiction and disposition hearing set for March 18.
On April 2, the court received the results of the paternity test, showing Karl is Karla's biological father. The court changed Karl's status to biological father, and later to presumed father.

DISCUSSION

I

Adequacy of the ICWA Notice

A
The ICWA, enacted by Congress in 1978, is intended to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most *209 important resource." (In re Desiree F. (2000) 83 Cal.App.4th 460, 469, 99 Cal.Rptr.2d 688.)
"The ICWA confers on tribes the right to intervene at any point in state court dependency proceedings. [Citations.] `Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending.' [Citation.] `Notice ensures the tribe will be afforded the opportunity to assert its rights under the [ICWA] irrespective of the position of the parents, Indian custodian or state agencies.' [Citation.]" (Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 253, 126 Cal.Rptr.2d 639 (Dwayne P.).) Under the ICWA, the tribe determines whether the child is an Indian child and its determination is conclusive. (Id. at p. 255, 126 Cal.Rptr.2d 639.) For purposes of the ICWA, an Indian child is defined as an unmarried person under the age of 18 who is: 1) a member of an Indian tribe; or 2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); Cal. Rules of Court, rule 1439(a)(1)(A) & (B).)
"[W]here the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a), italics added.) If the tribe's identity is unknown, the notice must be given to the Bureau as agent for the Secretary of the Interior. (Ibid.) "Since the failure to give proper notice of a dependency proceeding to a tribe with which the dependent child may be affiliated forecloses participation by the tribe, notice requirements are strictly construed." (In re Samuel P. (2002) 99 Cal.App.4th 1259, 1267, 121 Cal.Rptr.2d 820.) When proper notice is not given under the ICWA, the court's order is voidable. (25 U.S.C. § 1914; Dwayne P., supra, 103 Cal.App.4th at p. 260, 126 Cal.Rptr.2d 639.)

B

1
The parents contend the court erred by finding the ICWA inapplicable. They assert the Agency was required to file a copy of the notice it sent to the Blackfeet Tribe, and without the notice before the court, it had no evidence from which to conclude the notice was adequate.[5]
Notice under the ICWA must, of course, contain enough information to constitute meaningful notice. The Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584 (Nov. 26, 1979)) (Guidelines), which are designed to implement the ICWA, require that the notice include, among other things, the name of the Indian child; his or her tribal affiliation; a copy of the dependency petition; the petitioner's name and address of the petitioner's attorney; and a statement of the right of the tribe to intervene in the proceeding. (Guidelines, at p. 67588.)
Moreover, the Guidelines require that an original or a copy of each ICWA notice be filed with the juvenile court along with any return receipts. (Guidelines, 44 Fed.Reg., at p. 67588 (Nov. 26, 1979).) The commentary for the Guidelines explains notices must be filed "so there will be a complete *210 record of efforts to comply with the [ICWA]." (Id., at p. 67589.)
"The Guidelines are not binding on state courts. [Citation.] However, `cases that have resolved notice questions have followed the Guidelines in giving a broad reading to the obligation to give notice and redressing notice violations....' [Citations.]" (Dwayne P., supra, 103 Cal.App.4th at p. 255, 126 Cal.Rptr.2d 639.) The "construction of a statute by the executive department charged with its administration is entitled to great weight." (In re Junious M. (1983) 144 Cal.App.3d 786, 792, fn. 7, 193 Cal.Rptr. 40.) In Dwayne P., supra, 103 Cal.App.4th at page 255, 126 Cal.Rptr.2d 639, we found the Guidelines persuasive insofar as the ICWA notice requirements are concerned. Accordingly, we look to the Guidelines in resolving the ICWA notice issue here.
Additionally, by federal regulation an ICWA notice must include, if known, (1) the name, birthplace, and birth date of the Indian child; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents and other identifying information; and (4) a copy of the dependency petition. (25 C.F.R. § 23.11(d)(3) (2003); 59 Fed.Reg. 2248 (eff.Feb.14, 1994).) "[T]o establish tribal identity, it is necessary to provide as much information as is known on the Indian child's direct lineal ancestors." (25 C.F.R. § 23.11(b) (2003).)
Most appellate courts considering the issue have held the ICWA notice, and return receipts and responses of the Bureau or tribe, if any, must be filed with the juvenile court. In In re H.A. (2002) 103 Cal.App.4th 1206, 128 Cal.Rptr.2d 12, the Fifth District Court of Appeal published its opinion for the express purpose of emphasizing the importance of ICWA notice compliance. (Id. at p. 1214, 128 Cal.Rptr.2d 12.) Noting it frequently encountered "deficient records" (ibid.), the court stated: "We hold that a party, such as the [social services agency] here, who seeks the foster care placement of or termination of parental rights to a child who may be eligible for Indian child status, must do the following or face the strong likelihood of reversal on appeal to this court. [¶] First, the [social services agency] must complete and serve ... the `Notice of Involuntary Child Custody Proceeding Involving an Indian Child' along with a copy of the dependency petition. Second, the [social services agency] must file with the superior court copies of proof of the registered mail or certified mail and the return receipt(s), the completed [notice] that was served, and any responses received." (Id. at pp. 1214-1215, 128 Cal.Rptr.2d 12, some capitalization omitted.)
The form notice to which the court referred in In re H.A., supra, 103 Cal.App.4th at page 1211, 128 Cal.Rptr.2d 12, is numbered "SOC 319" and was promulgated by the State of California Health and Welfare Agency for the benefit of county agencies, and is intended to conform with the Guidelines' notice requirements. As the court held in In re C.D. (2003) 110 Cal.App.4th 214, 224-225, 1 Cal.Rptr.3d 578, form SOC 319 is deficient in that it does not contain a space for the names and addresses of grandparents and great grandparents, and other identifying information, if known, as required by 25 Code of Federal Regulations part 23.11(d)(3) (2003). The deficiency may be cured, however, if the social services agency also sends the tribe form SOC 318, which includes spaces for the information required by 25 Code of Federal Regulations part 23.11(d)(3) (2003). (In re C.D., supra, at pp. 225-226, 1 Cal.Rptr.3d 578.)[6]
*211 In In re Samuel P., supra, 99 Cal.App.4th 1259, 121 Cal.Rptr.2d 820, the Sixth District Court of Appeal held that since ICWA notices pertaining to some children were not provided to the juvenile court, it "did not have a sufficient record from which to make a determination whether there had been compliance with the notice provisions of the ICWA, or whether further inquiry was needed." (Id. at p. 1266, 121 Cal.Rptr.2d 820.) The court rejected the notion the juvenile court could rely on the social worker's statement in a report that she sent a request for confirmation of the children's status to the tribe. (Ibid.) Further, the court found the notice regarding another child was insufficient because "there was no information about the dependency proceedings, no court number identifying the proceedings, and no notice informing the tribe of the dates of any of the hearings." (Ibid.) The court explained a "tribe's mere `"awareness"' of a dependency proceeding involving a possible Indian child is not considered sufficient notice under the ICWA." (Ibid., citing In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1422, 285 Cal.Rptr. 507.)
In In re Asia L. (2003) 107 Cal.App.4th 498, 132 Cal.Rptr.2d 733, Division Three of the First District Court of Appeal held the social worker's testimony that she served the Bureau and tribes with forms SOC 318 and SOC 319 was insufficient. (Id. at pp. 507, 508, 132 Cal.Rptr.2d 733.) The court was unpersuaded by the argument it was unnecessary to file the notices as there was no evidence suggesting they were defective. The court explained that "[a]bsent the ability to review the forms, ... neither the trial court nor this court has the ability to evaluate whether the forms were defective." (Id. at p. 509, 132 Cal.Rptr.2d 733.)
Likewise, In re Jennifer A. (2002) 103 Cal.App.4th 692, 127 Cal.Rptr.2d 54, Division Three of the Fourth District Court of Appeal held the ICWA notice and any return receipt and response must be filed. The court explained "it is up to the juvenile court to review the information concerning the notice given, the timing of the notice, and the response of the tribe, so that it may make a determination as to the applicability of the ICWA." (Id. at p. 705, 127 Cal.Rptr.2d 54.) The court also concluded the nonfiling of the notice was prejudicial error even though the tribe responded that it could not trace the child and did not consider her to be an Indian child, because the information from which the tribe made its determination was unknown. (Ibid.; accord, In re Suzanna L. (2002) 104 Cal.App.4th 223, 232, 127 Cal.Rptr.2d 860 [Div. Two of Fourth Dist.].)
In contrast to the above cases, in In re Levi U. (2000) 78 Cal.App.4th 191, 92 Cal.Rptr.2d 648, the Third District Court of Appeal held the ICWA notice and proof of service need not be filed with the court, and a statement in the social worker's report that she notified the Bureau sufficed. The court found "there is no requirement that [the social services agency] demonstrate it did anything more than send notice." (Id. at p. 198, 92 Cal.Rptr.2d 648.) In In re L.B. (2003) 110 Cal.App.4th 1420, 3 Cal.Rptr.3d 16, the same court relied on In re Levi U. in holding that "ordinarily, when a social worker's report or other documentation indicates that ICWA notice has been provided, it can *212 properly be presumed that such notice complied with the requirements of the ICWA in the absence of any evidence in the record to the contrary." (Id. at p. 1425, 3 Cal.Rptr.3d 16.)
In In re L.B., however, the evidence showed the social worker served the tribes with forms SOC 318 and SOC 319. (In re L.B., supra, 110 Cal.App.4th at p. 1425, 3 Cal.Rptr.3d 16.) In In re Jeffrey A. (2002) 103 Cal.App.4th 1103, 127 Cal.Rptr.2d 314, the Third District held it could not presume the notice was adequate when it was referred to as a "request for verification," and there was no evidence the notice was sent on form SOC 319. The court concluded: "[T]here is nothing to indicate that the document referred to in the social worker's report as having been sent to the tribe included notice of the proceedings and of the right to intervene. Thus, it cannot be determined on this record whether proper notice of the proceedings was provided." (Id. at p. 1108, 127 Cal.Rptr.2d 314.)[7]

2
We join the weight of authority and hold the filing requirement set forth in the Guidelines is an essential component of the ICWA notice process. Without a review of the notices, the juvenile court is unable to determine whether they complied with the ICWA (25 U.S.C. § 1912(a)), the Guidelines (44 Fed.Reg. 67588 (Nov. 26, 1979)) and the federal regulation (25 C.F.R. § 23.11(d) (2003)), and gave the Bureau or the tribe all known relevant information and a meaningful opportunity to determine whether the dependent child is an Indian child within the meaning of the ICWA. Absent evidence the notice was sufficient, a tribe's nonresponse may not be deemed "tantamount to determinations that the minor [is] not an `Indian child' within the meaning of the [ICWA]." (In re Levi U., supra, 78 Cal.App.4th at p. 198, 92 Cal.Rptr.2d 648.)
We disagree with the Third District's conclusion in In re Levi U., supra, 78 Cal.App.4th at page 198, 92 Cal.Rptr.2d 648, and In re L.B., supra, 110 Cal.App.4th at p. 1425, 3 Cal.Rptr.3d 16, that a statement in the social worker's report that he or she sent ICWA notice is sufficient evidence of compliance with notice requirements. In the latter case, the court relied on Evidence Code section 664, which provides "[i]t is presumed that official duty has been regularly performed." The presumption is overcome by evidence the agency involved did not comply with all pertinent requirements. (La Costa Beach Homeowners' Assn. v. California Coastal Com. (2002) 101 Cal.App.4th 804, 820, 124 Cal.Rptr.2d 618.) Because the Guidelines require that notices be submitted to the juvenile court, the parents rebutted the presumption by showing the Agency did not follow that procedure.
Although the failure to file the notice may be deemed harmless error (see In re C.D., supra, 110 Cal.App.4th at p. 226-227, 1 Cal.Rptr.3d 578), such is not the case here. In ruling the ICWA is inapplicable, the juvenile court relied on a statement in the Agency's report that the social worker notified the Bureau and the *213 Blackfeet Tribe and an attorney's comment the "tribe was notified." The record contains no suggestion as to what form or forms the Agency used or what information the notice included. Therefore, the court was unaware of whether the Agency sent the tribe a copy of the dependency petition, or notified it of the names and addresses of the parents, or, if known, the names and addresses of the grandparents or great grandparents, the dates of hearings, or its right to intervene. Because the court's ruling the ICWA is inapplicable is unsupported by the evidence, we reverse the order with directions.
For the juvenile court's guidance on remand, we also hold the notice should include the information set forth in the Guidelines and 25 Code of Federal Regulations part 23.11(d)(3) (2003), to the extent such information is known. (In re C.D., supra, 110 Cal.App.4th at p. 226, 1 Cal.Rptr.3d 578.)

II

Request for Continuance
Karl contends he was denied his due process right to be heard when the court refused his request for continuance of the jurisdiction and disposition hearing pending receipt of the results of his paternity testing. Although we reverse the order, we resolve this issue because, as discussed below, the juvenile court may reinstate the order without a further hearing on the merits should it determine the Agency's notice to the Blackfeet Tribe was adequate.
As an alleged father, Karl had limited rights. "An alleged biological father in dependency proceedings is a man who may be the father of a child, but whose biological paternity has not been established. [Citation.] `An alleged father ... does not have a known current interest because his paternity has not yet been established.' [Citation.] An alleged biological father is entitled to notice of the proceedings. (§ 316.2, subd. (b).) Notice provides an opportunity for him to appear and assert a position." (In re Joseph G. (2000) 83 Cal.App.4th 712, 715, 99 Cal.Rptr.2d 915.) Karl was given notice of the proceedings and he was given the opportunity to seek to become a party by establishing his paternity. This comported with due process requirements for an alleged father, and until Karl established a higher status than alleged father he lacked standing and had no right to a continuance.
Further, the court did not abuse its discretion by denying the continuance request. The juvenile court may continue a dependency hearing at the request of a parent for good cause and only for the time shown to be necessary. (§ 352, subd. (a); Cal Rules of Court, rule 1422(a)(2).) Courts have interpreted this policy to be an express discouragement of continuances. (See, e.g., In re Emily L. (1989) 212 Cal.App.3d 734, 743, 260 Cal.Rptr. 810.) The court's denial of a request for continuance will not be overturned on appeal absent an abuse of discretion. (See in re Angela R. (1989) 212 Cal.App.3d 257, 265-266, 260 Cal.Rptr. 612.) Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice. (People v. Franco (1994) 24 Cal.App.4th 1528, 1543, 30 Cal.Rptr.2d 478.)
A disposition hearing must be conducted within 60 days of the detention hearing. (§ 352, subd. (b).) On March 13 when the court denied Karl's request for a continuance, the evidence was that the paternity test results would not be available for several more weeks, or well past the 60-day limit of section 352, subdivision (b). Under the circumstances, the court did not *214 abuse its discretion by proceeding without the test results. We are unpersuaded by Karl's assertion the test results actually became available within 50 or 57 days of the mandatory cut-off date, as we evaluate the court's reasonableness as of the time it made its decision.
We also reject Karl's contention he was not given "any meaningful opportunity to perfect his paternity status." On February 4, the court made a timely paternity inquiry and promptly ordered paternity testing to take place on February 7. Karl did not show up for the testing, and there is no suggestion he brought this to the court's attention until February 25, when the court ordered him to undergo testing the following day. Thus, Karl, and not the court, caused the delay.

DISPOSITION
The March 13, 2003 order is reversed. The matter is remanded to the juvenile court for its acceptance of the Agency's filing of the notice it sent the Blackfeet Tribe and determination of whether the notice was adequate and proper. If the notice is sufficient, and if as a result of the tribe's nonresponse the court determines the ICWA is inapplicable, it is to reinstate the order. If the notice is insufficient, the court must order the Agency to send a new notice to the Blackfeet Tribe, and to file a copy of the notice, and return receipt and response, if any, with the court.
WE CONCUR: BENKE and NARES, JJ.
NOTES
[1] Statutory references are to the Welfare and Institutions Code except when otherwise specified.
[2] All dates are in 2003.
[3] The Blackfeet Tribe of the Blackfeet Indian Reservation of Montana is a federally recognized American Indian tribe. (67 Fed.Reg. 46328 (July 12, 2002).)
[4] In addressing the court, counsel misspoke and reported the tribe responded stating it had insufficient information to determine if Karla were eligible for tribe membership. The record shows that only the Bureau responded to the Agency.
[5] The parents principally assert the Agency should have submitted to the court a copy of its notice to the Bureau. However, since the identity of the tribe is known here, notice to the Bureau is not required. (25 U.S.C. § 1912(a); Cal. Rules of Court, rule 1439(f).)
[6] In In re C.D., supra, 110 Cal.App.4th 214, 1 Cal.Rptr.3d 578, the court recommended that the State of California Health and Welfare Agency issue a new form that allows a county agency to provide the Bureau or tribe with all of the information identified in the Guidelines and 25 Code of Federal Regulations part 29.11(d) (2003) on one document. (In re C.D., supra, at p. 226, 1 Cal.Rptr.3d 578.)
[7] In In re Marinna J. (2001) 90 Cal.App.4th 731, 109 Cal.Rptr.2d 267, the Third District Court of Appeal noted in a footnote that to satisfy the notice requirements of the ICWA, the social services agency should provide the juvenile court with copies of the notice sent and the return receipt, as well as any response from the Bureau or tribe. (Id. at pp. 739-740, fn. 4, 109 Cal.Rptr.2d 267.) In In re L.B., supra, 110 Cal.App.4th at page 1425, footnote 3, 3 Cal.Rptr.3d 16, that court explained the procedure suggested in In re Marinna J. was not mandatory, but "would head off numerous appellate complaints of non-compliance with the ICWA."