51 Cal.Rptr.3d 130 (2006)
144 Cal.App.4th 1349
In re K.W., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Tabitha C, Defendant and Appellant.
No. D048762.
Court of Appeal of California, Fourth District, Division One.
November 9, 2006.
*133 Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy, and J. Jeffrey Bitticks, Deputy County Counsel, for Plaintiff and Respondent.
Andrea Renee S. Julian, under appointment by the Court of Appeal, San Diego, for Minor.
Certified for Partial Publication.[*]
McCONNELL, P.J.
Tabitha C., the mother of K.W., appeals the judgment terminating her parental rights under Welfare and Institutions Code[1] section 366.26. Tabitha contends reversal is required because the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) were not followed. Tabitha also appeals the juvenile court's refusal to grant an evidentiary hearing on her section 388 petition to have K.W. placed with her in a drug rehabilitation program. Tabitha contends she was entitled to a hearing because her petition established a prima facie case that circumstances had changed and the relief she was seeking was in the best interest of K.W.

FACTUAL AND PROCEDURAL BACKGROUND
In late February 2004 Tabitha, then 14 years old, gave birth to K.W. A day after the birth, Tabitha tested positive for marijuana metabolites. Tabitha was not responsive to the newborn; hospital staff had to wake up Tabitha to feed K.W., and once awakened, she soon went back to sleep even though the baby continued to cry. As a result, a nurse had to feed the baby.
On March 1 the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition on behalf of K.W., alleging she was at substantial risk of harm because Tabitha could not provide regular care as a result of Tabitha's drug use, young age, and lack of parenting skills. (§ 300, subd. (b).) K.W. was detained in a licensed foster home. Also at the detention hearing, Tabitha's counsel indicated ICWA did not apply and the court made a ruling to that effect.
Tabitha consistently visited K.W. at the foster home, showing love and nurturance toward K.W. However, the foster mother reported that Tabitha had stolen checks and cash.
On April 22, 2004, Tabitha submitted to the petition on the basis of the social worker's report, and the court sustained the petition. The court declared K.W. a dependent child, removed her from Tabitha's custody, placed her in a licensed foster home, and ordered Tabitha to comply with her case plan. The court authorized funding *134 for a psychiatric evaluation of Tabitha to determine if she needed medication.
In September Tabitha finished a 21-day detoxification program at a teen drug rehabilitation center. Tabitha, who was living with the maternal grandfather and attending school, enrolled in an out-patient drug program, and was going to Narcotics Anonymous meetings. Tabitha regularly visited K.W. and was appropriate. The social worker believed that Tabitha had become serious about reunification and accepted blame for K.W.'s dependency.
At Tabitha's request, the Agency initiated an evaluation under the Interstate Compact on the Placement of Children (ICPC) of the maternal grandaunt's home in Las Vegas, Nevada.
At the six-month review hearing in October 2004, the court ordered six more months of services for Tabitha. However, in November Tabitha dropped out of her drug rehabilitation program and stopped participating in reunification services. On January 27, 2005, Tabitha tested positive for methamphetamine. Tabitha's last visit with K.W. took place on the child's birthday in February.
In April 2005 the social worker learned that Tabitha had been placed on probation for stealing from the former foster mother. The social worker was unable to contact Tabitha because she had left the maternal grandfather's home and did not leave any contact information. Tabitha's probation officer also did not know how to contact her.
For the upcoming 12-month review hearing, the Agency recommended the court terminate reunification services and set a section 366.26 hearing. The Agency also recommended that K.W. be placed with the maternal grandaunt in Las Vegas, who had received a favorable ICPC evaluation.
On April 20, 2005, Tabitha was brought to court from juvenile hall, where she had been detained. Tabitha opposed the Agency's recommendations and requested a trial for the 12-month review hearing. Tabitha also opposed placement of K.W. in the maternal grandaunt's home in Las Vegas.
When Tabitha was released from juvenile hall later that month, she did not participate in reunification services or contact the social worker. Tabitha's whereabouts were unknown.
On July 5, the date set for a contested 12-month review hearing, Tabitha submitted on the Agency's recommendations. The court terminated reunification services and set a section 366.26 hearing. Tabitha was detained in juvenile hall again.
The Agency assessed K.W. as likely to be adopted because of "her young age, overall good physical health, normal development and friendly nature." K.W.'s care-givers wanted to adopt her; K.W. had been in their home since April 22, 2004.[2]
On October 26, 2005, the social worker observed a visit between Tabitha and K.W. It was the first time that Tabitha had seen K.W. in eight months. Tabitha was happy to see K.W., who went to Tabitha easily. Tabitha played with K.W. and made her laugh. Tabitha fed K.W. peaches that the caregiver had provided. K.W. did not cry at the end of the visit.[3]
*135 On October 27 the social worker asked Tabitha if she had Indian heritage, and Tabitha responded that her grandfather was a Sioux Indian. The Agency asked the court to continue the section 366.26 hearing to give notice to recognized Sioux tribes under ICWA.
On November 16 the social worker interviewed Tabitha to obtain information pertinent to her Indian heritage; the social worker reported the interview had yielded "some information" that would help in completing the standardized notice form. On November 30 the Agency sent ICWA notices by certified mail to 16 Sioux tribes and the BIA.
On January 18, 2006, the Agency requested another continuance to re-notice the Sioux tribes because the previous notices contained the wrong date for the hearing.
On April 4 the court found ICWA did not apply. Tabitha asked for a contested section 366.26 hearing.
Tabitha filed a section 388 petition on May 19, seeking placement of K.W. with her and family maintenance services. As changed circumstances, the petition alleged Tabitha, among other things, had completed a parenting program, had enrolled in the California Family Living Center (CFLC)a residential drug rehabilitation program in Riverside Countyand had been sober for more than three months, was attending Narcotics Anonymous meetings, was receiving individual therapy, and was visiting K.W. regularly. The court denied the section 388 hearing without an evidentiary hearing.
On June 5, 2006, the court found K.W. was likely to be adopted and none of the statutory exceptions to adoption applied. The court terminated parental rights and selected adoption as KW.'s permanent plan.

DISCUSSION

I. ICWA Notice

Tabitha contends the juvenile court erred by finding ICWA did not apply because the Agency did not comply with the notice requirements of ICWA. Specifically, Tabitha asserts the Agency did not (1) adequately fulfill its obligation under ICWA to inquire about family history, (2) address notices to the proper tribal agents and/or use correct mailing addresses, and (3) send notices to Tabitha and the father, as required under ICWA.

Legal Principles
In 1978 Congress enacted ICWA to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) ICWA allows a tribe to intervene in dependency proceedings involving an Indian child because the law presumes it is in the child's best interests to retain tribal ties and heritage and that it is in the tribe's interest to preserve future generations. (In re Desiree F. (2000) 83 Cal.App.4th 460, 469, 99 Cal. Rptr.2d 688.)
ICWA sets forth specific notice requirements:
"[W]here the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with *136 return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).)
If the identity of the tribe cannot be determined, notice must be given to the Bureau of Indian Affairs (BIA). (Ibid.; Dwayne P. v. Superior Court (2002) 103 Cal. App.4th 247, 253, 126 Cal.Rptr.2d 639.)
The Indian tribe determines whether the child is an Indian child. (In re Desiree F., supra, 83 Cal.App.4th at p. 470, 99 Cal.Rptr.2d 688.) "`A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive.'" (Dwayne P. v. Superior Court, supra, 103 Cal.App.4th at p. 255,126 Cal.Rptr.2d 639.)
Notice must be sent whenever there is reason to believe the child may be an Indian child. (In re Desiree F., supra, 83 Cal.App.4th at p. 471, 99 Cal.Rptr.2d 688; Cal. Rules of Court,[4] rule 1439(f)(5).) "[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement." (In re Nikki R. (2003) 106 Cal.App.4th 844, 848, 131 Cal.Rptr.2d 256.) Notice is not a matter of due process; it is mandated by federal statute. (In re Stephanie M., supra, 7 Cal.4th at p. 316, 27 Cal.Rptr.2d 595, 867 P.2d 706.)
Because "`failure to give proper notice of a dependency proceeding to a tribe with which the dependent child may be affiliated forecloses participation by the tribe, [ICWA] notice requirements are strictly construed.'" (In re Karla C. (2003) 113 Cal.App.4th 166, 174, 6 Cal. Rptr.3d 205.) The notice sent to the BIA and/or Indian tribes must contain enough information to be meaningful. (Id. at p. 175, 6 Cal.Rptr.3d 205.) The notice must include: "if known, (1) the name, birthplace, and birth date of the Indian child; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition." (Ibid.; citing 25 C.F.R. § 23.11(d)(3) (2003); 59 Fed.Reg. 2248 (eff. Feb. 14,1994).)
To enable the juvenile court to review whether sufficient information was supplied, the Agency must file with the court the ICWA notice, return receipts and responses received from the BIA and tribes. (In re Karla C, supra, 113 Cal. App.4th at pp. 175, 178-179, 6 Cal.Rptr.3d 205.)
It is also essential for the Agency to provide the Indian tribe with as much information as is known about the child's ancestors, especially the one with the alleged Indian heritage. (In re Louis S. (2004) 117 Cal.App.4th 622, 631, 12 Cal. Rptr.3d 110.) In In re Louis S., we found the tribe could not conduct a meaningful search to determine the child's tribal heritage because the Agency, among other errors, did not provide birthdates for the maternal grandmother or maternal great-grandmother. We noted the maternal grandmother's birth date was available because the children were in foster care with her. (Ibid.) Thus, notice to the tribe must include available information about the child's maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment number; and other identifying information. (Id. at p. 630, 12 Cal. Rptr.3d 110.)
A "social worker has `a duty to inquire about and obtain, if possible, all of *137 the information about a child's family history' " required under regulations promulgated to enforce ICWA. (In re S.M. (2004) 118 Cal.App.4th 1108, 1116, 13 Cal.Rptr.3d 606.)
Rule 1439(f)(6) provides: "If, after a reasonable time following the sending of notice under this rulebut in no event less than 60 daysno determinative response to the notice is received, the court may determine that [ICWA] does not apply to the case unless further evidence of the applicability of [ICWA] is later received."
The notice requirements of ICWA are mandatory and cannot be waived by the parties. (In re Jennifer A (2002) 103 Cal.App.4th 692, 707, 127 Cal.Rptr.2d 54.)

Factual Background
At the beginning of the case, Tabitha denied having Indian heritage. However, when queried by the adoption assessment social worker on October 27, 2005, Tabitha responded that she had Indian heritage through her grandfather, Robert S., a Sioux Indian. The Agency asked the court to continue the section 366.26 hearing to enable the social worker to notice Sioux tribes under ICWA. The court granted the continuance request.
On November 16, 2005, the social worker interviewed Tabitha and obtained information pertinent to her Indian heritage. On November 30 the Agency sent ICWA notices by certified mail to 16 Sioux tribes and the BIA.
For the maternal great-grandfather (Tabitha's grandfather), the notices did not list any information other than his name and that he was a member of a Sioux tribe in South Dakota. The notices listed as "unknown" the great-grandfather's current and former addresses, his birth date and birthplace, his tribal enrollment number, and whether he was deceased and if so his place of death.
On January 18, 2006, the Agency asked for another continuance after discovering the ICWA notices mailed in November contained the wrong date. The court granted another 75-day continuance to allow the Agency to re-notice the Sioux tribes.
On January 20 the Agency re-noticed the Sioux tribes and the BIA.[5] As a result of the two sets of notices, the Agency received responses from 10 of the 16 tribes stating that K.W. was not a member of the respective tribe or eligible for tribal membership.
On April 4, 2006, the court found ICWA did not apply.

Analysis
First, Tabitha argues unpersuasively that the Agency did not fulfill its continuing duty to inquire and obtain additional family history for the ICWA notice. In essence, Tabitha is complaining that the Agency did not give more informative notice to the identified tribes, and the Agency should have done more to obtain additional information about the maternal great-grandfather (Tabitha's grandfather).
We acknowledge that to enable a tribe to determine whether a dependent child is an Indian child, the notice sent to the tribe must contain enough information to be meaningful. (See In re Karla C, supra, 113 Cal.App.4th at p. 175, 6 Cal. *138 Rptr.3d 205.) "`[T]o establish tribal identity, it is necessary to provide as much information as is known on the Indian child's direct lineal ancestors.' [Citation.]" (Ibid.) The Agency's affirmative duty to inquire whether a child may be an Indian child mandates, at a minimum, that it make some inquiry regarding the information required in the ICWA notice besides name, birth date and birthplace of the child's parents. (In re D.T. (2003) 113 Cal.App.4th 1449, 1455, 5 Cal.Rptr.3d 893.)
However, Tabitha has not shown how the Agency shirked any of its obligations to inquire. To the contrary, there is substantial evidence the Agency fulfilled its duty of inquiry. (In re Rebecca R. (2006) 143 Cal.App.4th 1426, 1430, 49 Cal.Rptr.3d 951.) It was because the Agency inquired further that the possible Indian heritage was discovered and explored. Originally, Tabitha had denied any Indian heritage. It was only after the adoption assessment social worker inquired in October 2005 one and one-half years after the dependency proceeding beganthat Tabitha mentioned that her grandfather was a Sioux Indian. The Agency promptly asked the court for a continuance of the section 366.26 hearing so it could provide ICWA notice to the BIA and the federally recognized Sioux tribes.
Further, the record shows that the social worker met with Tabitha and obtained additional information to fill out the ICWA notices. The social worker affirmatively marked as "unknown" the spaces on the ICWA forms for the maternal great-grandfather's date of birth, birthplace, tribal enrollment number, and whether he was deceased and the corresponding date of death. Given these circumstances, it is reasonable to conclude the social worker specifically inquired about the maternal great-grandfather.
Tabitha argues the Agency should have contacted the maternal great-grandfather and/or other maternal relatives to obtain additional information about the maternal great-grandfather. However, Tabitha could not supply any contact information for the maternal great-grandfather and did not know if he was still alive. As to interviewing the maternal grandmother, the record does not show that she had any additional information about her father.[6] Further, Tabitha's appellate argument rests on the unfounded assumption that other maternal relatives would have added pertinent information to identify K.W.'s Indian heritage. Of course, this possibility is pure speculation. On this record, we cannot say that maternal relatives could have provided or would be willing to provide such information. In this evidentiary vacuum, we consider that the presumption that "official duty has been regularly performed" bars us from speculating as to what information the social worker might have obtained had she been able to contact maternal relatives. (Evid.Code § 664; see also In re L.B. (2003) 110 Cal.App.4th 1420, 1425, 3 Cal.Rptr.3d 16.) "There are no inconsistencies in the evidence to rebut the presumption that [the Agency] properly carried out its duties." (In re Rebecca R, supra, 143 Cal.App.4th at p. 1430, 49 Cal.Rptr.3d 951.)
Moreover, assuming arguendo that there was error, any error was harmless. ICWA is not the source of a duty of continuing inquiry; rather, the source is rule 1439(d), which reads: "The court, the county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under section 300, 601, or 602 is to be, or has been, filed is or may be an Indian child."
*139 "[A]ny failure to comply with a higher state standard, above and beyond what the ICWA itself requires must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error. (Cal. Const., art. VI, § 13; People v. Watson (1956) 46 Cal.2d 818, 836[, 299 P.2d 243].)" (In re S.B. (2005) 130 Cal.App.4th 1148, 1162, 30 Cal.Rptr.3d 726.)
Here, there is nothing in the record to suggest that had the court or the Agency inquired further, more information on the maternal great-grandfather would have been obtained. Accordingly on this record, even if we were to reverse and remand with directions to make further inquiry, there is no reason to suppose that the outcome would be any different.
We conclude that there is sufficient evidence that the social worker made the requisite further inquiry. Furthermore, even if the requisite inquiry was not made, Tabitha has not shown the error was prejudicial.
Second, Tabitha claims the Agency did not address notices to the proper tribal agents and/or use correct mailing addresses. Tabitha concedes this assignment of error only applies to those six tribes that did not reply to ICWA notices. However, any irregularity in the address the Agency used to contact these tribes is harmless because the tribes clearly had actual notice. A representative of each of these tribes signed the requisite certified mail receipts, which are part of the record on appeal.
Third, Tabitha asserts the Agency violated ICWA notice requirements because it did not send KW.'s parents notice of their rights under ICWA. (25 U.S.C. § 1912(a).) Initially, we note that Tabitha lacks standing to assert this ICWA claim on behalf of K.W.'s father. (In re Jeffrey A. (2002) 103 Cal.App.4th 1103, 1109, 127 Cal.Rptr.2d 314.)
With respect to Tabitha's right to receive written ICWA notice, she failed to raise this issue in juvenile court, and therefore waived or forfeited it. (In re L.B., supra, 110 Cal.App.4th at p. 1426, 3 Cal.Rptr.3d 16.) Nor can Tabitha prevail on substantive grounds. The record shows Tabitha had actual notice that K.W. might be an Indian child and participated in the proceedings. (See In re Jeffrey A, supra, 103 Cal.App.4th at p. 1109, 127 Cal.Rptr.2d 314.) It was Tabitha who told the adoption assessment social worker that the great-grandfather was a Sioux Indian. Subsequently, the social worker interviewed Tabitha about her Indian heritage to obtain more information for the ICWA notices. Thus, there is no need to reverse and remand on the basis that she did not receive written ICWA notice.

II. Section 388[**]

DISPOSITION
The judgment is affirmed.
HUFFMAN and NARES, JJ., concur.
NOTES
[*] The opinion filed November 9, 2006, is certified for publication with the exception of Part II.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] It was later stipulated at the section 366.26 hearing that 16 prospective adoptive families were willing to adopt a child with K.W.'s characteristics.
[3] After Tabitha was released from juvenile hall in November 2005, she did not contact the social worker for visits with K.W. Later, after Tabitha entered a residential drug treatment program in Riverside County, visits resumed in April 2006, with center staff transporting Tabitha to San Diego County. During these visits, K.W. clung to the foster mother and was reluctant to be held by Tabitha.
[4] All rules references are to the California Rules of Court.
[5] Again, the notices did not list any information for the maternal great-grandfather (Tabitha's grandfather) other than his name and that he was a member of a Sioux tribe in South Dakota. The notices listed as "un-known" the great-grandfather's current and former addresses, his birth date and birthplace, his tribal enrollment number, and whether he was deceased and if so his place of death.
[6] The record shows the maternal grandmother was born in Seville, Spain.
[**] See footnote *, ante.