Filed 10/2/13  In re E.R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re E. R., a Person Coming Under the Juvenile Court Law. | B245482 |
| | (Los Angeles County Super. Ct. No. CK81640) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| JULIE R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Rudolph A. Diaz, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel for Plaintiff and Respondent.

Julie R. (mother) appeals from the juvenile court's order terminating her parental rights as to her daughter E. (born August 2008).[1] Mother contends that the juvenile court failed to comply with the requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) before terminating her parental rights pursuant to Welfare & Institutions Code section 366.26.[2] Mother argues that this error requires reversal of the judgment. We find mother has failed to show reversible error and affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**Initial detention and section 300 petition**

On March 24, 2010, DCFS received a referral alleging that at approximately 1:30 a.m., Deputy Villagran found E., then age two, and Robert, then age eight months, alone and unattended. E. was wandering around her mother's car, and Robert was in the back seat of the car alone. Mother was approximately 50 feet away. When the officer approached mother, she initially denied owning the car. However, she later admitted she owned the car and was the mother of the children. Mother had an outstanding no bail warrant for her arrest. Methamphetamine and a glass pipe were found on her person. Mother was arrested, and the children were taken into protective custody.

DCFS placed the children with Robert's paternal grandmother, Janet B.[3]

Mother informed the social worker that Robert's father was Christopher K., who was homeless. Mother named Ivory G. as E.'s father, and advised that Ivory was

---

[1] Mother initially appealed the orders terminating her parental rights as to E. and her two siblings, Robert (born July 2009) and Ciera (born June 2010). However, the Department of Children and Family Services (DCFS) filed a motion to dismiss the appeal as to Robert and Ciera, since the appeal contained no claims of error as to them. We granted the motion to dismiss, and will discuss Robert and Ciera only as necessary to completely set forth the pertinent facts.

[2] All further statutory references are to the Welfare & Institutions Code unless otherwise noted.

[3] E. was later placed in the home of her paternal aunt, Eunice G.

incarcerated.[4]  Both mother and Christopher denied that they have any American Indian heritage.

On March 26, 2010, DCFS filed a section 300 petition on behalf of E. and Robert, alleging that mother placed the children in an endangering and detrimental situation in that she left them alone in a vehicle at 1:20 a.m., without adult supervision, that mother had a history of substance abuse, and that Robert's and E.'s respective fathers failed to provide them with the necessities of life.

At the March 26, 2010 detention hearing, the juvenile court asked Robert's paternal grandmother if Robert's father had any Native American heritage.  She replied that he did not.  The juvenile court ordered the children detained.

**Paternity and ICWA information**

On April 2, 2010, mother filed a Parental Notification of Indian Status form, indicating she had no American Indian ancestry as far as she knew.  Mother also filed a parentage questionnaire for E., stating that E.'s father was unknown, and a parentage questionnaire for Robert, stating that his father was Christopher.

At the April 2, 2010 arraignment hearing, mother's counsel stated mother did not have any Native American heritage, and that mother did not know the identity of E.'s father.

The juvenile court found that Christopher was Robert's presumed father.  It ordered a due diligence on an identity unknown father and Ivory.  The court found the children were not described by ICWA.[5]

---

**4**     Neither Christopher nor Ivory is a party to this appeal.

**5**     Mother argues there is a discrepancy between the reporter's transcript and the clerk's transcript on this point.  Mother argues the juvenile court's ICWA finding only related to Robert.  We disagree.  At the time the court made this finding, it had information as to only one parent for E. -- mother.  After inquiring about mother's possible Native American heritage, the court stated:  "Then as to the child Robert, the court has no reason to know that this would be an Indian Child Welfare Act case.  *ICWA does not apply*."  (Italics added.)  Thus, after noting that there was no ICWA information specifically as to Robert, the court made a general finding of the nonapplicability of

In the April 20, 2010 jurisdiction/disposition report, the social worker reported that she interviewed mother on April 14, 2010, at which time mother said E. had never met Ivory, but that he wrote once a month. Ivory's name was not on E.'s birth certificate.

On April 20, 2010, Christopher filed a Parental Notification of Indian Status form, stating he had no Indian ancestry as far as he knew.[6]

On August 5, 2010, the DCFS social worker reported to the court that she made several attempts to contact Ivory at his place of incarceration, but the telephone number for the institution rang incessantly and she was unable to speak to anyone.

On September 23, 2010, the court appointed counsel to represent Ivory. The juvenile court held in abeyance the allegations against the fathers and sustained the allegations against mother concerning her leaving the children unsupervised in her car at night and her history of substance abuse.

Ivory waived his appearance at the November 19, 2010 hearing. The juvenile court sustained an allegation against him that he was incarcerated and unable to provide E. with the necessities of life.

The August 4, 2011 status review report contained the social worker's report that the juvenile court found ICWA did not apply to E. and Robert. Mother's counsel made no effort to change the record on this point.

The social worker said she spoke with Ivory in February and May 2011 and informed him of the juvenile court's orders. The social worker mailed Ivory a copy of the orders. Ivory was in partial compliance with the case plan. In the December 6, 2011 interim review report, the social worker reported a conversation with Ivory on December

---

ICWA to the proceedings. This general finding as to both children was accurately reflected in the minute order dated April 2, 2010, which states: "The court finds that children are not children as described by ICWA."

[6] Ciera R. was born on June 10, 2010, during the pendency of these proceedings. She was born prematurely with respiratory distress syndrome. DCFS filed a section 300 petition on behalf of Ciera. On June 22, 2010, the juvenile court found that Christopher was Ciera's presumed father, and the court had no reason to know or believe that Ciera was an Indian child as defined by the ICWA.

2, 2011, wherein he said he did not want to attend the December 6, 2011 hearing because he did not want to lose his lead job. He wanted his sister to adopt E. and indicated he would not be released from prison for at least two years.

On July 2, 2012, DCFS recommended that the juvenile court make a paternity finding for E. The juvenile court found Ivory to be E.'s presumed father.

**Termination of parental rights**

The February 27, 2012 interim review report contained the social worker's report that E. remained placed in the home of her paternal aunt and was thriving. E. had been in the home since approximately August 2011. Robert and Ciera remained in the home of their paternal grandparents, who were willing to adopt them.

At the March 5, 2012 six-month review hearing, the juvenile court found that none of the parents had complied with the case plan and terminated reunification services. The juvenile court set the matter for a section 366.26 hearing.

In the July 2, 2012 status review report, the social worker reported that the adoption home study for E.'s paternal aunt was completed and approved on October 14, 2011. The adoption home study for Robert and Ciera's paternal grandparents was completed on October 19, 2011. DCFS recommended that the juvenile court terminate parental rights.

At the September 11, 2012 section 366.26 hearing, the children's counsel joined with DCFS in requesting the juvenile court terminate parental rights. The juvenile court complied and terminated parental rights over E., Robert and Ciera.

On November 7, 2012, mother filed her notice of appeal.

**DISCUSSION**

**I. ICWA**

ICWA is federal legislation designed to protect American Indian people and their culture. (25 U.S.C. § 1902; *In re Crystal K.* (1990) 226 Cal.App.3d 655, 661.) ICWA applies to all proceedings involving Indian children that may result in an involuntary foster care placement; guardianship or conservatorship placement; custody placement under Family Code section 3041; declaration freeing the child from the custody and

5

control of one or both parents; termination of parental rights; or adoptive placement. (Cal. Rules of Court, rule 5.480.)

An "Indian child" is defined as any unmarried person under the age of 18 who is (1) a member of an Indian tribe; or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224, subd. (c).)

If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved in a dependency proceeding, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child as soon as practicable. In a dependency proceeding, there is a continuing duty of the court and DCFS to inquire whether the subject child may be Indian. (See § 224.3, subd. (a), (c).) The social worker or probation officer must interview the parents and extended family members to gather the information required, then contact the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes of which the child may be a member or eligible for membership. (§ 224.3, subd. (c).)

## II. Standard of review

Where, as here, the trial court has made a finding that ICWA is inapplicable, the finding is reviewed under the substantial evidence standard. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430 (*Rebecca R.*); *In re Karla C.* (2003) 113 Cal.App.4th 166, 178-179.) Thus, we must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we must indulge all legitimate inferences in favor of affirmance. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.) A juvenile court's ICWA finding is also subject to harmless error analysis. (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.)

## III. Mother has failed to show reversible error

### A. *Mother's argument*

Mother's sole claim of error is that the juvenile court erred in failing to make an ICWA inquiry as to E.'s presumed father, Ivory. Mother argues that the petition for E. filed March 26, 2010, did not include an Indian child inquiry, nor did the first amended

6

petition filed May 18, 2010.  Mother argues that DCFS compounded the error by stating in its subsequent reports, from August 4, 2011 through July 2, 2012, that the court found on April 2, 2010, that ICWA did not apply to E. and Robert.  It was not until July 2, 2012, that the court made a paternity finding as to E. and found that Ivory was the presumed father.

Mother points out that the juvenile court must order a parent to complete a Parental Notification of Indian Status form upon the parent's first appearance in a dependency proceeding.  (Cal. Rules of Court, rule 5.481(a)(2); *In re N.E.* (2008) 160 Cal.App.4th 766, 769 (*N.E.*).)  If the parent does not appear or is unavailable, the court must order the agency with the inquiry duty to inform the parent that the court has ordered the parent to complete the Parental Notification of Indian Status form.  (Cal. Rules of Court, rule 5.481(a)(3).)  Here, mother argues, the court never ordered Ivory to complete a Parental Notification of Indian Status form, and DCFS provided no proof of its inquiry to Ivory as to Indian status.

### B.  Harmless error

DCFS argues that any notice defect regarding Ivory was harmless error because mother has failed to show a miscarriage of justice, as required by the California Constitution, article VI, section 13.  DCFS likens this case to *Rebecca R.*  In *Rebecca R.*, the child's father argued that termination of his parental rights should be set aside because the San Bernardino County Department of Children's Services (DCS) failed to inquire whether he had any American Indian ancestry, despite the juvenile court's order that DCS do so.  (*Rebecca R., supra*, 143 Cal.App.4th at p. 1428.)  No documentation existed in the case showing that DCS had inquired of father as to his Indian ancestry.

The Court of Appeal concluded that reversal was not required.  First, father's claim was based in part on a provision that was not in force when the dependency proceeding began.  The rule requiring form JV-130 (Parental Notification of Indian Status) had not yet gone into effect.  (*Rebecca R., supra*, 143 Cal.App.4th at p. 1420.)  Because the rule requiring the form did not exist at the commencement of the dependency proceedings, compliance with the rule was not required.

The court also noted that no evidence suggested that the duty of inquiry was not satisfied. Among other things, the social worker's reports consistently indicated that ICWA did not apply. (*Rebecca R., supra*, 143 Cal.App.4th at p. 1430.) In addition, the court rejected the father's claim because he "failed to show a miscarriage of justice, which is the fundamental requisite before an appellate court will reverse a trial court's judgment. [Citation.]" (*Ibid.*) The court explained:

> "Father is here, now, before this court. There is nothing whatever which prevented him, in his briefing or otherwise, from removing any doubt or speculation. He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. He did not.
>
> "In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.]"

(*Rebecca R., supra*, 143 Cal.App.4th at p. 1431.)

The *Rebecca R.* court continued:

> "The ICWA is not a 'get out of jail free' card dealt to the parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way."

(*Rebecca R., supra*, 143 Cal.App.4th at p. 1431.)

DCFS argues that the matter before us presents a scenario similar to the one under consideration in *Rebecca R.* DCFS points out that mother says nothing, even now, regarding what information about Ivory might exist that could implicate ICWA.

Similarly, in *N.E.*, a father appealed the termination of his parental rights, arguing that the social services agency had failed to comply with its inquiry duties under ICWA.

The court admitted it was not clear that the agency had complied with its inquiry obligations, but stated:

> "Even if the juvenile court and SSA failed in their inquiry responsibilities, we cannot disturb the juvenile court's order without a showing Andre was prejudiced by the claimed error. (Cal. Const., art. VI, § 13.) And in this case, where there is absolutely no suggestion by Andre that he in fact has any Indian heritage, he has failed to demonstrate the requisite prejudice."

(*N.E., supra*, 160 Cal.App.4th at p. 769.)

Other courts have agreed that a parent must make an affirmative showing that a miscarriage of justice would result in order to obtain a reversal for noncompliance with ICWA. In *In re S.B.* (2005) 130 Cal.App.4th 1148 (*S.B.*), the court expressed the view that "[a]n ICWA notice violation may be held harmless when the child's tribe has actually participated in the proceedings [citation] or when, even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied. [Citations.]" (*Id.* at p. 1162, fn. omitted.) (See also *In re Miracle M.* (2008) 160 Cal.App.4th 834, 847 ["Mother has not demonstrated how giving the parents further notice would generate additional information"].)

We adopt the rationale of these cases in holding that in this case, mother has failed to show reversible error. We reject mother's argument that DCFS carries the burden in this appeal to show compliance with ICWA. Instead, as appellant, it is mother's burden to show prejudicial error. (Cal. Const., art. VI, § 13.)

9

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:



_____, P. J.
BOREN



_____, J.*
FERNS


_____
\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.