Filed 1/27/14  In re Martin R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re MARTIN R. et al., Persons Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Plaintiff and Respondent, v. S.R. et al., Defendants and Appellants. | C074263 (Super. Ct. Nos. JD231847, JD232582) |

Mother and father appeal the juvenile court's order terminating their parental rights to two-year-old Martin and one-year-old Nathaniel.  They contend the juvenile court abused its discretion by denying father's request to continue the Welfare and Institutions Code section 366.26 hearing.[1]  We conclude the juvenile court did not abuse its discretion in denying the continuance.  We affirm the order.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

In September 2011, the Sacramento County Department of Health and Human Services (Department) filed a section 300 petition on behalf of then four-month-old Martin. The petition alleged: (1) the parents had a history of domestic violence in front of the minor; (2) the parents had failed to benefit from services; (3) mother had failed to protect the child; and (4) father had a substance abuse problem. The petition also alleged abuse of siblings.[2] In October 2011, mother was granted a restraining order. Following a contested jurisdictional and dispositional hearing in February 2012, the juvenile court found the allegations of the petition true, granted reunification services to mother, but denied them to father.

By July 2012, mother had made some progress in her reunification plan, including completing parenting classes, domestic violence counseling, and individual counseling. Father had been released from jail following his domestic violence conviction in late March 2012 and was living with mother. Mother had unsupervised visits but when the Department learned about the continuing contact with father, it began supervising the visits again.

The Department filed a section 300 petition in August 2012 alleging Nathaniel, then about four months old, was a dependent child based on the domestic violence between the parents, their continued contact, and the abuse of siblings. Following a contested hearing, the juvenile court found the allegations true, and in November 2012 declared him a dependent. Father was denied reunification services for Martin and Nathaniel. Mother's reunification services as to Martin were terminated. Mother was denied reunification services as to Nathaniel. A section 366.26 hearing for both children was set for March 18, 2013.

---

[2] In 2008, the minors' siblings were declared dependents of the court based on substance abuse and domestic violence issues and parental rights had been terminated as to those children.

Martin was placed in his current foster home in December 2011 and Nathaniel was placed with him in August 2012. They were both developmentally on target, happy, and healthy. Martin was cute, friendly, and busy. Nathaniel was a happy, laughing, and smiling baby. Neither had any health or behavioral problems. The Department considered both children generally adoptable.

Between September 2011 and the end of November 2011, mother missed 11 of 22 scheduled visits with Martin. She cancelled one scheduled visit between January and February 2012. From February 2012 through July 2012, she cancelled nine visits. Between August 7, 2012, and October 19, 2012, mother cancelled four visits and left two early. The visits were supervised until May 2012 at which point they became observed visits. In July 2012, the visits returned to being supervised. Father had one visit in September 2011 and, upon his release from incarceration, resumed monthly supervised visits from April through July 2012. Father also attended two make-up visits in January 2013. He did not visit with the children between January 23, 2013, and March 2013.

Neither parent was present for the March 18, 2013, section 366.26 hearing. Counsel informed the juvenile court there was a medical emergency. Accordingly, the court continued the matter to March 25, 2013.

On March 25, 2013, father's counsel requested an evaluation for purposes of appointing a guardian ad litem because father had suffered a serious head injury after an assault. Mother and father also requested the restraining order be lifted so mother could care for father. The court continued the section 366.26 hearing to April 15, 2013, and lifted the restraining order. Neither parent attended the April 15, 2013, hearing, stating they had transportation problems. The trial court granted another continuance and ordered father to attend on April 29, 2013, for an evaluation of his need for a guardian ad litem. The section 366.26 hearing was set for May 14, 2013. At the April 29, 2013, hearing, father requested a continuance. The trial court continued the evaluation to

May 6, 2013. On May 6, 2013, neither parent appeared. Counsel confirmed the May 14, 2013, section 366.26 hearing date and both parents were ordered to appear.

Neither parent appeared on May 14, 2013. Mother's counsel indicated father was seeing a surgeon with respect to his injury and requested a continuance for the guardian ad litem evaluation. The trial court continued the matter to May 20, 2013. On May 20, 2013, neither parent appeared. Counsel indicated mother had reported their car had broken down and was being towed. The juvenile court ordered the parents to appear on May 29, 2013, with proof that their car was towed.

The parties appeared at the hearing on May 29, 2013. They did not present evidence their car had been towed. Following a hearing, the juvenile court appointed a guardian ad litem for father and continued the matter to July 10, 2013, noting the guardian ad litem would "need time to get up to speed." A pretrial conference was set for June 26, 2013, and the juvenile court ordered both parents to appear on both dates. Neither parent appeared at the pretrial conference. The guardian ad litem was present. The guardian ad litem verified he was available and ready to proceed to trial on July 10, 2013, and confirmed the parents had received adequate notice.

Neither parent appeared on July 10, 2013. Mother reported father refused to come out of his room because he had expected to meet with the guardian ad litem prior to the hearing. Since they had not met, father essentially had "what's described as -- . . . like a five year old having a tantrum." Because he was a "fall risk" and mother was his sole caretaker, she did not feel she could leave him alone. The guardian ad litem confirmed he had not met with father, but stated he had planned to at court, prior to the hearing. He had tried to speak with father on the phone, but mother informed him father was not able to speak on the phone. Counsel requested a continuance. The Department and minors' counsel opposed the request. The court noted the matter had been pending since March, the children were quite young, the issue to be resolved was whether the children were likely to be adopted, and the parents had not requested modification of any previous

4

orders. The court also considered that in the context of the juvenile dependency laws, delay is not in the best interest of the children. The juvenile court found there was not good cause for a continuance and further delay of the section 366.26 hearing would not be in the children's best interest. Accordingly, the juvenile court denied the request for an additional continuance. The juvenile court then terminated parental rights as to both parents and ordered adoption as the permanent plan.

## DISCUSSION

Mother and father contend the trial court abused its discretion in denying the requested continuance. We disagree.

The juvenile court may continue a dependency hearing for good cause and only for the time shown to be necessary. (§ 352, subd. (a); Cal Rules of Court, rule 5.550(a).) Courts have interpreted this statute as expressly discouraging continuances. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 179.) Continuances are discouraged, particularly because a minor's issues should be resolved expeditiously. (*In re Emily L.* (1989) 212 Cal.App.3d 734, 743.) The parent has the burden to establish good cause. (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 196.) We review the denial of a request for a continuance for abuse of discretion. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.) In exercising its discretion, the juvenile court "shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).)

We conclude the juvenile court did not abuse its discretion in denying the continuance. The parents did not establish good cause for the continuance. The section 366.26 hearing was originally scheduled for March 2013. For a variety of reasons, the parents missed a number of court dates and received a number of continuances, resulting in a delay of the section 366.26 hearing of almost four months. The guardian ad litem was appointed in May and the section 366.26 hearing was not scheduled until July.

5

The parents offered no rationale why meeting the father's guardian ad litem prior to the day of the scheduled hearing was necessary. Nor did the parents offer any explanation of why, if they felt such a meeting was necessary, they had not attempted to meet with the guardian ad litem before the hearing. If the parents had appeared as ordered at the June pre-trial conference, they could have met with the guardian ad litem. The parents did not object to the appointment of the guardian ad litem or seek his removal.

The parents did not suggest there was any evidence missing from the social worker's reports, offer any additional witnesses to be called, or proffer testimony they would have provided on the issue of the children's adoptability or whether any exception to adoption applied. They do not offer any such arguments on appeal. The parents did not offer any assurances they would be able to attend a subsequently scheduled hearing. Moreover, the parents offered no argument why a further delay in the proceedings would be in the children's best interest. Delay cannot be in the children's best interest if there is no realistic chance the delay will offer a superior alternative. In short, the parents offered nothing to support a finding of good cause.

Even if we assume the juvenile court erred by denying the continuance, to obtain a reversal the parents must still demonstrate the result of the continued hearing would have changed in the absence of the error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) As discussed above, the children were young, developmentally on target, happy, and healthy. They did not have any behavioral or medical problems. The children had been living together in the preadoptive home for the majority of their lives; Martin since he was seven months old and Nathaniel since he was four months old. There were marked inconsistencies in the parents' compliance with the visitation schedule, and only a few of mother's visits were unsupervised. The record supports the conclusion that these children are adoptable. The parents have not established the existence of any of the section 366.26, subdivision (c)(1), exceptions or even argued such an exception might

6

apply.  They have not suggested there is any evidence that was not considered by the trial court as a result of the continuance or that that evidence would have changed the result of the hearing.  Accordingly, they have not demonstrated any prejudice in the juvenile court's denial of the continuance.  To the extent there was any error, it was harmless.

## DISPOSITION

The order of the juvenile court terminating parental rights is affirmed.


HOCH      , J.


We concur:


BLEASE      , Acting P. J.


NICHOLSON    , J.


7