Filed 9/16/22  In re H.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re H.D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E077835 |
| Plaintiff and Respondent; | (Super.Ct.No. INJ1800331) |
| v. | OPINION |
| J.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho, Judge. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham and Prabhath D. Shettigar, Deputy County Counsel for Plaintiff and Respondent.

1

This is an appeal taken by the father of H.D. (the child) from an order of the juvenile court denying his request for a continuance of the child's Welfare and Institutions Code section 366.26 permanent plan selection hearing.[1]  We affirm.

## BACKGROUND

The history of the dependency proceedings leading up the setting of the section 366.26 hearing can be found in the record filed in father's prior appeal (which we incorporated into this one on our own motion) and our opinion issued in that appeal (*In re C.D.* (Aug. 8, 2021, E076214) [nonpub. opn.]).

Suffice to say here that, in October 2018, respondent Riverside County Department of Public Services took the child (then seven years old), her twin brother, and their two-year-old sibling into protective custody after it discovered a number of issues in their home.  Both parents suffered from mental health problems, they engaged in extensive ongoing verbal and physical domestic violence in the children's presence, and they neglected the children.  In addition, father's condition of Traumatic Encephalopathy contributed to his mental health difficulties, which were sufficiently severe to require section 5150 holds.

The Department placed the children in a foster home.

In January 2019, the juvenile court sustained the Department's section 300 petition, declared the children dependents of the court, continued their placement in foster care, and ordered family reunification services.  During the first six months of services,

---

[1]  All statutory references herein are to the Welfare and Institutions Code.

father did not interact with the social worker, initially refusing to attend meetings without counsel, and then cancelling appointments. He attended only one in-person visit, and his participation in telephone visits had been inconsistent.

During the next six-month period, father canceled or failed to attend 13 out of 16 scheduled visits with the children, he had not enrolled in any court-ordered services, and made no progress in his case plan. The court terminated reunification efforts as to him at the November 2019 12-month review hearing. It continued the mother's services for an additional six months.

Within a couple of weeks following the hearing, the behaviors of the child and her twin took a turn for the worse. The child began acting out and refused to visit the mother, who had resumed her relationship with father. Her twin's behavior became so aggressive that the caregiver requested his removal. After he attacked and injured several staff members at his school, the Department concluded there were no options available that would help him, so he was returned to the mother with family maintenance services.

Father filed a section 388 petition seeking reunification or family maintenance services, which was heard along with the 18-month review held in November 2020, over two years after the children had been taken from the physical custody of their parents. The court returned the child's youngest sibling to the mother with provision of family maintenance services and continued her twin's placement in mother's home. By then, the child, who had long been struggling with a variety of issues including self-injurious behavior and aggression toward her mother, was doing well in school and had made

significant progress in therapy. She was afraid to be returned home and wanted to remain with the caregiver. The court set her case for selection of a permanent plan pursuant to section 366.26.

The court denied father's section 388 petition and he appealed to this court. We found the juvenile court had not abused its discretion in denying the petition because, although father's efforts to engage in services after termination of family reunification services were commendable, the court's concern that his circumstances had not changed was well founded.

When the contested permanent plan selection hearing for the child commenced in April 2021, the child's counsel reported his client wanted to be adopted by her caretaker but also wanted to continue her relationship with her siblings. The court found a plan of adoption would cause substantial interference with the child's sibling relationships and identified legal guardianship as the permanent plan. It continued the matter to September so the Department could determine if the caretaker was amenable to a plan of legal guardianship.

On July 30, 2021, the child ran away from her placement but was found twenty minutes later. The caregiver reported the incident to the Department and asked for a mental evaluation of the child because she seemed to be regressing. The child had disclosed that she had lied when she said sibling visits had been going well, and she had "marked" herself six or seven times on each of her legs. An assessment of her was completed five days later, and she was referred to more intensive therapy.

4

The child's behaviors were reported to the mother at a team meeting held on August 16, 2021, and she filed a request for an order requiring a psychological evaluation of the child. A hearing officer, who was not the judge who had been handling the child's case since its inception, granted the request, appointed a doctor to conduct the examination, and directed the report to be submitted to the clerk's office on or before September 22, that is, a week before the hearing.

By September 2021, the child had made progress employing coping strategies, although she would regress some when things did not go her way or when she was confronted with a plan to see her family. She continued to attend weekly therapy sessions, and was doing well both in school and at home. Her caregiver was willing to forego adoption and be the child's legal guardian. The child was not happy with the plan because she wanted the caregiver to adopt her.

The parents did not appear at the September 29, 2021 permanent plan selection hearing and the court's efforts to reach them by telephone were not successful. Mother's counsel, joined by counsel for the father and counsel for the child's twin, asked to have the matter continued because their clients were not present and because the psychological evaluation ordered in response to the mother's request had not yet taken place.

The court denied the requests for a continuance. It ordered legal guardianship with the caretaker as the child's permanent plan and terminated her dependency. Father appealed.

**DISCUSSION**

Father claims the juvenile court abused its discretion when it denied a continuance and proceeded with the permanent plan selection hearing. We disagree.

Section 352 governs requests for continuances in juvenile dependency cases. In relevant part, it authorizes the court to grant a request made by counsel for a party to continue the hearing beyond the time limit within which the hearing is otherwise required to be held, so long as the continuance will not be contrary to the interest of the minor. (§ 352, subd. (a)(1).) The statute directs the court to give substantial weight to three considerations: the child's need for prompt resolution of her custody status, the need to provide the child with a stable environment, and the damage to her of a prolonged temporary placement. (*Ibid.*)

The court's decision on a request for a continuance is reviewed for abuse of discretion. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 180.) That is, we will not overturn a juvenile court's denial of a continuance unless the decision is arbitrary, capricious, or patently absurd, and results in a manifest miscarriage of justice. (*Ibid.*)

Here, the court's decision not to continue the hearing was properly based upon the child's need for permanence, the extreme importance to her of her relationship with the caregiver, the suitability of that placement, and its conclusion that continuing the case would cause her stress.

In response to the arguments that it should not select a permanent plan until the court-ordered psychological report was completed, the court found mother's request for

the evaluation was untimely in view of the child's three-year history of self-harming behaviors. The child had suffered fear and stress on account of her parents' domestic violence at an early age. The court pointed out the child had been going through emotional upheaval since the dependency began and that she had been referred for mental health services "from the very get-go." Early on in the proceedings she would vomit whenever she had visits with father, she had been seeing a therapist weekly for nearly three years, and had also been seen by a psychiatrist and medical doctor during that period. The court concluded that nothing the evaluation might say would impact the fact that the trust between the child and the parents had been broken.

The court also rejected arguments that a continuance for the evaluation was necessary because the child had been unduly influenced or coached by the caregiver, noting it had heard nothing to that effect from a professional or the child's counsel.

In his brief on appeal, father argues the court could not have properly considered permanency options without the benefit of the evaluation and it was an abuse of discretion not to continue the hearing until it was completed. We are not persuaded.

Father's claim overlooks that the purpose of evaluation was not to provide guidance about the child's placement or opine whether she should be returned to her parents. Rather, the hearing officer limited the evaluation request to the issue of what the appropriate treatment for the child should be. And, he made the order without the benefit of knowing the history of the case and upon the representation of mother's counsel that the child's self-injurious behavior was a new development that needed to be addressed

right away and could not wait to be heard at the next hearing scheduled for the next month.

It is clear the hearing officer was not aware that the Department and the judge who had been presiding over the case since its inception had long been cognizant of, and had been addressing, the child's self-harming and other behavioral issues, including the specific incident forming the basis of the mother request. The court had ensured the child was receiving therapy regularly. And, that it recognized changing the permanent plan from adoption to legal guardianship contrary to her wishes was likely to cause her to suffer distress is evidenced by it asking the Department to contact her therapist to determine whether any additional, more intensive trauma therapy was needed.

In short, contrary to father's claim, the court did not have a "blind spot" in its information with respect to the child's mental health issues when it denied the requests for a continuance. Indeed, it bottomed its decision to go forward with the hearing on its awareness of those issues and the stress the child was suffering because of the uncertainty caused by delays in establishing a permanent plan for her.

### DISPOSTION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:
SLOUGH
J.
RAPHAEL
J.