Filed 4/20/23 In re K.T.M. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| In re K.T.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B322343 (Super. Ct. No. 20JV00467) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>B.G., et al.,<br><br>    Defendants and Appellants. | |

B.G. (father) and K.M. (mother) separately appeal the juvenile court's order terminating their parental rights to two-year-old K.T.M. and selecting adoption as the permanent plan.

(Welf. & Inst. Code, § 366.26.)[1]  Father and mother's sole contention on appeal is that the Santa Barbara County Child Welfare Services (CWS) and the juvenile court did not comply with the inquiry and notice requirements pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C., § 1901 et seq.) and related California law.[2]  We affirm.

*Facts and Procedural History*

In December 2020, CWS petitioned the juvenile court to detain six-month-old K.T.M. after mother became overwhelmed with the care of the baby and had thoughts of harming herself and K.T.M.  The petition alleged that mother had been homeless throughout K.T.M.'s life, suffered from mental illness, was subject to several restraining orders.  CWS had investigated four referrals in six months concerning mother's mental health.  The petition also alleged father was abusing methamphetamine and heroin, was arrested for the forced rape of mother in the presence of K.T.M., and understood K.T.M. was unsafe with mother but continued to allow mother to provide care for the baby.

At the detention hearing, father denied having any Indian ancestry when asked by the juvenile court.  Mother stated that she had Indian ancestry through maternal grandfather, who she believed was affiliated with the "Kurok" tribe of Northern California.  Father completed the ICWA-020, "Parental

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

2

Notification of Indian Status" form, and declared, under penalty of perjury, that none of the criteria indicating Indian ancestry applied to him. Mother also completed the ICWA-020 form and checked the boxes indicating that she and K.T.M. are or may be a member of, or are eligible for membership in, a federally recognized Indian tribe, and that one or more of her parents, grandparents, or lineal ancestors is or was a member of the Kurok tribe located in Happy Camp, California. She listed maternal grandfather and maternal great grandfather as the relatives through whom she claimed Indian ancestry.

CWS filed an amended petition, which included an Indian Child Inquiry Attachment. The attachment indicated that CWS had asked parents about K.T.M.'s Indian status and there was reason to believe K.T.M. is or may be an Indian child.

CWS mailed mother an ICWA Questionnaire, obtained ancestry information regarding K.T.M.'s relatives from three different databases, and spoke with mother who provided additional ancestry information. CWS included this information in the ICWA matrix, which also indicated that maternal grandfather was in the process of obtaining membership in the Kurok tribe and all of his siblings were receiving benefits through the tribe.

CWS met with both parents to conduct a social study/family assessment for the jurisdiction and disposition report. Mother indicated she was raised by maternal grandmother but remained in contact with maternal grandfather. During CWS's interview with father, paternal grandfather was present and participated in the interview. There was no indication that either parent was adopted.

In February and July 2021, CWS mailed the ICWA-030 forms, "Notice of Child Custody Proceeding for Indian Child," to father and mother, the Bureau of Indian Affairs, Secretary of the

Interior, and various other tribes including the Karuk Tribe of California, Quartz Valley Indian Reservation, Bear River Band/Rohnerville Rancheria, Big Lagoon Rancheria, Blue Lake Rancheria, Cher-Ae Heights/Trinidad Rancheria, Elk Valley Rancheria, Resighini Rancheria, and the Yurok tribe. The notices included ancestry information for father and mother, maternal grandparents, paternal grandparents, maternal great grandparents, and paternal great grandparents.

CWS also included a cover letter with the notices that requested the Tribal ICWA representative to search its census roll to determine if K.T.M. is eligible for enrollment or is enrolled with the tribe. The letter stated that CWS had "conducted a diligent search to obtain as much family ancestry information as possible," and that it had "contacted all family members known to [the] agency and ha[d] obtained all ancestry information known to them." (Italics omitted.) Prior to sending the second set of ICWA notices in July 2021, CWS spoke with mother and confirmed the correct spelling of the "Kurok" tribe as it did not match a tribe listed in the Bureau of Indian Affairs registry. None of the responding tribes claimed K.T.M. as an Indian child.

In February 2022, CWS emailed an ICWA inquiry with the family tree to the following tribes: Yurok Tribe of the Yurok Reservation, the Karuk Tribe, Resighini Rancheria, Big Lagoon Rancheria, and Blue Lake Rancheria. The Yurok Tribe responded that none of the individuals listed in the family tree are enrolled with the Yurok Tribe. Big Lagoon Rancheria also responded that none of the individuals listed were members or eligible for membership in its tribe.

At the contested 12-month review hearing, the juvenile court found there is no reason to believe that ICWA applies in this case.

In August 2022, following a contested section 366.26 hearing, the juvenile court terminated the parental rights of father and mother, and found by clear and convincing evidence, that K.T.M. is likely to be adopted.

*Motion to Augment*

On December 13, 2022, prior to filing its respondent's brief, CWS filed a motion to augment the record on appeal to include evidence of an updated ICWA matrix for K.T.M. that CWS filed in the juvenile court on December 12, 2022. The document reveals that between August 2022 and December 2022, CWS contacted several members of mother's extended family to inquire about K.T.M.'s possible Indian ancestry.

For example, CWS contacted Jessica S., who is mother's half sister. She "recall[ed] that there could be [Indian] ancestry in maternal grandfather's family," but did not provide any further information. CWS also contacted maternal cousin, Diane E., with whom K.T.M. was placed. She stated that "there is no Native American ancestry in the family as far as she knows." CWS attempted to contact maternal grandfather on at least two occasions and left voicemails with call back instructions on his cell phone. He did not return their calls. CWS contacted maternal aunt, Mallory M., who stated "there is [Indian] ancestry with [maternal grandfather's] family," but was not sure which tribe. She also explained that it can be difficult to reach maternal grandfather because his phone is "always broken." She stated she would try to get in touch with him and would contact CWS with any tribal information maternal grandfather knows. No further information was provided.

After CWS moved to augment the record with the updated ICWA matrix, father filed an opposition. He contends this court should reject the motion "because it contains a post-judgment filing in violation of the long-held standard that such [a]

document is inappropriate for appellate review." We deferred resolution of CWS's motion to augment pending completion of briefing.

Currently, there is a split of authority as to whether an appellate court should consider additional evidence outside the lower court record concerning a child services agency's investigatory efforts pursuant to ICWA. This issue is pending review before our state Supreme Court. (*In re Kenneth D.* (2022) 82 Cal.App.5th 1027, review granted Nov. 30, 2022, S276649.) We conclude that additional evidence may be considered in certain circumstances, where as here, the evidence is beneficial to resolving appellant's ICWA claim of error on appeal.

Code of Civil Procedure section 909 permits appellate courts to make independent factual findings and take additional evidence on appeal. Our Supreme Court cautions that this authority should be exercised sparingly. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) But Code of Civil Procedure section 909 "also mandates it shall be liberally construed where a cause may be disposed of in a single appeal." (*In re E.L.* (2022) 82 Cal.App.5th 597, 600 (*E.L.*), review granted Nov. 30, 2022, S276508.) "When, however, postjudgment evidence is offered to an appellate court in support of a motion to dismiss a juvenile dependency appeal, it is 'routinely conder[ed]' because, if the motion is granted, it will have 'the beneficial consequence' of "'expedit[ing] the proceedings and promot[ing] the finality of the juvenile court's orders and judgment.'"" (*In re Allison B.* (2022) 79 Cal.App.5th 214, 219; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, fn. 4 (*Dezi C.*), review granted Sept. 21, 2022, S275578.)

Accordingly, we grant CWS's motion to augment the record with the updated ICWA matrix.

*ICWA Inquiry and Notice*

Father and mother contend the judgment terminating their parental rights should be conditionally reversed and the matter remanded to the juvenile court because CWS and the juvenile court failed to conduct an adequate inquiry and therefore, notice was incomplete.

We review claims of inadequate inquiry and notice for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430; *In re J.T.* (2007) 154 Cal.App.4th 986, 991.)

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4) & (8); § 224.1, subd. (a).) The juvenile court and the county child welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).)

"'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."'" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire begins with the initial contact and obligates the juvenile court and the child services agency to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child. (§ 224.2, subds. (a)-(c); *E.L., supra*, 82 Cal.App.5th at p. 607.)

The duty of further inquiry is triggered if the child services agency or the juvenile court has "reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd. (e).) There is

"reason to believe" a child is an Indian child "whenever the court [or] social worker . . . has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) Further inquiry includes interviewing the parents, extended family members, contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership, contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subds. (e)(1), (e)(2)(A)-(C).)

The duty to notify the relevant tribes is triggered if there is "reason to know that an Indian child is involved." (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) A "reason to know" exists in any of the following circumstances: (1) a person having an interest in the child informs the court that the child is an Indian child; (2) the residence or domicile of the child or the child's parents is on a reservation or in an Alaska Native village; (3) any participant in the proceeding informs the court that it has discovered information indicating the child is an Indian child; (4) the child who is the subject of the proceeding gives the court reason to know he or she is an Indian child; (5) the court is informed that the child is or has been a ward of a tribal court; and (6) the court is informed that either parent or child possess an identification card indicating membership in an Indian tribe. (§ 224.2, subd. (d).)

Here, based on mother's statements that she and K.T.M. had Indian ancestry and may be eligible for membership with the Kurok tribe, CWS elected to conduct further inquiry by sending ICWA-030 notices to the various tribes, the Bureau of Indian Affairs, and the Secretary of the Interior. But neither CWS nor

the juvenile court inquired of father and mother's extended family members about K.T.M.'s possible Indian ancestry, despite having contact with several family members throughout the proceedings.

The question becomes whether the error is harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Appellate courts are presently divided as to what standard to apply when assessing whether a defective inquiry is harmless. As one appellate court aptly explained, "[t]his diversity of rules is understandable . . . because courts are grappling with . . . how the *absence* of information (that is, answers to the questions about American Indian heritage that the agency never asked) might affect the juvenile court's ICWA finding." (*Dezi C., supra,* 79 Cal.App.5th at p. 778.)

Here, father and mother suggest the correct approach is the "rule of automatic reversal." That rule requires reversal when the initial inquiry is deficient "no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court." (*Dezi C., supra,* 79 Cal.App.5th at p. 777.) In the alternative, father and mother suggest application of the "readily obtainable information rule," set forth in *Benjamin M., supra,* 70 Cal.App.5th at p. 744. That rule provides that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Ibid.*)

Respondent contends father and mother have not carried their burden to demonstrate prejudicial error because "there was no readily available information that would bear meaningfully on the issue of Native American heritage," (*Benjamin M., supra,* 70 Cal.App.5th at p. 744) and "the record contains no information

9

suggesting a reason to believe [K.T.M.] may be an Indian child." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779 (noting a "fourth rule," the "reason to believe" rule).)

We reject appellants' invitation to apply the "automatic reversal rule" because error on the part of the juvenile court is never presumed. We will not "set aside" the juvenile court's judgment unless it "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.) Here, it has not.

As reflected in the augmented record on appeal, CWS contacted several of mother's extended family members and inquired about possible Indian ancestry, but none of these inquiries provided any information about a specific tribal affiliation. They merely confirmed that there was a suggestion of Indian ancestry through maternal grandfather. CWS attempted to contact maternal grandfather, who presumably would have information that would bear meaningfully on the issue of Indian ancestry, but he has not returned any of CWS's calls. The law requires a child services agency to make a "meaningful effort" to locate and interview extended family members. It is not required to cast about for information or pursue unproductive investigative leads, particularly when a potential source of information is either unavailable or unresponsive. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 709; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199.)

Father and mother next contend, and respondent concedes, that CWS did not ask father's extended family members about K.T.M.'s possible Indian ancestry. We conclude the error was not prejudicial. This is not a case where father was adopted or estranged from his biological family such that his "self-reporting of 'no [Indian] heritage' may not be fully informed . . . ." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, citing *In re A.C.* (2022) 75

10

Cal.App.5th 1009, 1015-1017.) To the contrary, he was raised by his parents, "speaks to them all the time," has consistently denied having any Indian ancestry, and neither father nor mother point to anything in the record that suggests otherwise. Given these facts, it is unlikely paternal grandfather would have information that would bear meaningfully on the issue of K.T.M.'s possible Indian ancestry even if CWS had asked him. Accordingly, CWS's failure to comply with its initial duty of inquiry is harmless error. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; *In re Y.M.* (2022) 82 Cal.App.5th 901, 917.)

Father and mother next contend the notices were inaccurate and incomplete. This contention is meritless. "[S]haring of information with tribes at [the further] inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know' – rather than a 'reason to believe' – that the child is an Indian child." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049.)

Here, mother's claim of Indian ancestry did not rise to the level of information indicating that K.T.M. is an Indian child within the meaning of section 224.2, subdivision (d). A suggestion of Indian ancestry is not sufficient under ICWA or related California law to trigger the notice requirement. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 886-887; *In re M.W.* (2020) 49 Cal.App.5th 1034, 1047 ["'reason to believe' the minor is an Indian child triggers requirements less rigorous than does a 'reason to know'"].) Accordingly, any omission in the ICWA notices is of no consequence.

We conclude remand is not warranted here because there is no evidence that K.T.M. is an Indian child or that remand for further inquiry would lead to a different ICWA finding.

*Disposition*

The judgment (order terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

I concur:


GILBERT, P. J.

BALTODANO, J., Dissenting:

I respectfully dissent. The Santa Barbara County Child Welfare Services and juvenile court's failure to ask Father's extended family whether K.T.M. may be an Indian child was not harmless.

The Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) serves "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." (25 U.S.C. § 1902; Welf. & Inst. Code, § 224.[1]) Thus, the juvenile court and agency "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).)

Initial inquiry requires a child services agency "ask[ ] the child, parents, legal guardian, Indian custodian, extended family members, [and any] others who have an interest in the child . . . whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) Extended family includes, among others, the child's grandparents. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Here, Father was the only person on the paternal side of the family the agency asked regarding K.T.M.'s possible Indian ancestry. After Father said he did not have Indian ancestry, CWS's inquiry of paternal relatives ended there. But the agency's duty of inquiry was not met simply because Father denied Indian ancestry. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) The agency interviewed the paternal grandfather but did not inquire about K.T.M.'s Indian ancestry. Father said he spoke to paternal grandmother "all the time," but CWS did not attempt

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

1

to contact her.  On this record, there is no substantial evidence (§ 224.2, subd. (i)(2); *In re A.M.* (2020) 47 Cal.App.5th 303, 314) that the agency and the juvenile court fulfilled their duty of initial inquiry as to Father's family members who were available to the agency.

While the law does not require the agency to contact every extended family member (see *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1006-1007), there must be a reasonable inquiry. (*In re J.K.* (2022) 83 Cal.App.5th 498, 508, fn. 7.)  Based on the facts here, the agency's initial inquiry was not reasonable.  "The duty to develop information concerning whether a child is an Indian child rests with the court and the [child services agency], not the parents or members of the parents' families."  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 430.)  I would conditionally affirm the order terminating parental rights but remand this case to the juvenile court for the limited purpose of allowing the agency and the juvenile court to comply with the inquiry requirements of ICWA and related California law as to Father's extended family.  (*In re J.K.*, at p. 511; *In re Antonio R.,* at pp. 436-437.)

NOT TO BE PUBLISHED.

BALTODANO, J.

2

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____


Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant, B.G.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant, K.M.

Rachel Van Mullem, County Counsel, Jennifer J. Lee, Deputy County Counsel, for Plaintiff and Respondent.