Filed 6/21/23  In re N.Y. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re N.Y., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B322194 (Super. Ct. No. 22JV00197) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>L.Y.,<br><br>    Defendant and Appellant. | |

L.Y. (mother) appeals the juvenile court's jurisdiction and disposition findings and orders made pursuant to Welfare and Institutions Code section 300, subdivisions (a) & (b).[1]  Mother's

---

    1 All further undesignated statutory references are to the Welfare and Institutions Code.

sole contention on appeal is that the Santa Barbara County Child Welfare Services (CWS) and the juvenile court did not comply with the initial inquiry requirements pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C., § 1901 et seq.) and related California law.[2]  We affirm.

*Facts and Procedural History*

In June 2022, CWS petitioned the juvenile court to detain 13-year-old N.Y. after mother took him out of Santa Barbara Cottage Hospital against medical advice.  Hospital staff alerted authorities and mother was subsequently stopped by highway patrol as she drove with N.Y. to Redding where maternal grandmother lived.

The detention report indicated that mother met with a CWS social worker and reported she did not have any Indian ancestry.  At the detention hearing, mother again denied having any Indian ancestry when asked by the juvenile court.

In July 2022, at the initial contested jurisdiction and disposition hearing, father denied having any Indian ancestry.  At CWS's request, the juvenile court found there was no reason to believe ICWA applies.  No party objected to the juvenile court's ICWA finding.  Mother subsequently completed an ICWA-020 form, "Parental Notification of Indian Status," and declared, under penalty of perjury, that none of the criteria indicating Indian ancestry applied to her or N.Y.

The disposition report indicated that CWS was unable to complete the family social study assessment with mother because

---

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

she did not return the agency's calls. The report also indicated that CWS spoke with father about his family and discussed a possible relative placement for N.Y. Father suggested paternal aunt and provided CWS with her contact information.

In August 2022, following the contested jurisdiction and disposition hearing, the juvenile court found the allegations of the second amended petition to be true, declared N.Y. a dependent of the juvenile court, and ordered reunification services for mother. The juvenile court also found "there is no reason to know that the child is an Indian child."

*Motion to Augment*

In December 2022, CWS filed an uncontested motion to augment the record on appeal to include evidence of an updated ICWA matrix CWS filed in the juvenile court on December 16, 2022. We granted the motion. The augmented record reveals that between September 2022 and December 2022, CWS attempted to contact extended family members and a family friend to inquire about N.Y.'s possible Indian ancestry. For example, CWS attempted to reach paternal aunt by telephone on two occasions and left voicemails with callback instructions. Paternal aunt did not return CWS's calls. The ICWA matrix also reveals that CWS texted mother requesting contact information for maternal grandmother and mother's friend, Jennifer M., but mother did not respond to CWS's request.

Currently, there is a split of authority as to whether an appellate court should consider additional evidence outside the lower court record concerning a child services agency's investigatory efforts pursuant to ICWA. This issue is pending review before our state Supreme Court. (*In re Kenneth D.* (2022) 82 Cal.App.5th 1027, review granted Nov. 30, 2022, S276649.) We conclude that additional evidence may be considered in certain circumstances, where as here, it will have the beneficial

consequence of expediting the proceedings and promoting the finality of the juvenile court's orders and judgment.  (See *In re Allison B.* (2022) 79 Cal.App.5th 214, 219; *In re E.L.* (2022) 82 Cal.App.5th 597, 600, review granted Nov. 30, 2022, S276508; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, fn. 4 (*Dezi C.*), review granted Sept. 21, 2022, S275578.)

*ICWA Inquiry*

Mother contends the juvenile court erred in finding ICWA did not apply because the initial inquiry conducted by the juvenile court and CWS was insufficient.  We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence.  (§ 224.2, subd. (i)(2); *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4) & (8); § 224.1, subd. (a).)  The juvenile court and the county child welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child.  (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).)  The duty to inquire begins with the initial contact and obligates the juvenile court and the child services agency to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child.  (§ 224.2, subds. (a)-(c); *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

Here, mother and father denied having any Indian ancestry, and the juvenile court found there was no reason to believe ICWA applied.  However, the record does not reflect that either the juvenile court or CWS asked any extended family members whether N.Y. is, or may be, an Indian child.

4

The question becomes whether the error is harmless. (Cal. Const., art. VI, §13; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Presently, appellate courts are divided regarding the proper standard to apply in determining the prejudicial effect of an agency's failure to comply with its duty of initial inquiry. Respondent contends the tests set forth in *Benjamin M.* and *Dezi C.* "strike the appropriate balance" between cases that favor automatic reversal and those that favor presumptive affirmance.

For example, respondent contends an agency's failure to conduct a proper initial inquiry is harmless if (1) there was no readily obtainable information that was likely to bear meaningfully on the issue of Indian ancestry (*Benjamin M.*, *supra*, 70 Cal.App.5th 735), or (2) the record contains no information suggesting a reason to believe the child may be an Indian child (*Dezi C.*, *supra*, 79 Cal.App.5th 769).

Here, as reflected in the augmented record on appeal, CWS attempted to contact paternal aunt, and attempted to obtain contact information for maternal grandmother and mother's friend, Jennifer M. But neither paternal aunt nor mother have responded to CWS's inquiry efforts. Given these facts, CWS's failure to comply with its duty of initial inquiry does not constitute prejudicial error.

The law requires a child services agency to make a "meaningful effort" to locate and interview extended family members or other relevant, involved individuals. It is not required to cast about for information or pursue unproductive investigative leads, particularly when a potential source of information is unavailable or unresponsive. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 709; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199.)

Moreover, it is unlikely that paternal aunt, maternal grandmother, or mother's friend would have information that

would bear meaningfully on the issue of N.Y.'s possible Indian ancestry, even if CWS had asked them. First, the record reflects mother and father were in contact with extended family members and could have asked about possible Indian ancestry at any time. (See *In re Y.M.* (2022) 82 Cal.App.5th 901, 917.) Second, there is no evidence that either parent was adopted or estranged from their biological family such that their "self-reporting of 'no [Indian] heritage' may not be fully informed . . . ." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, citing *In re A.C.* (2022) 75 Cal.App.5th 1009, 1015-1017.)

Because error on the part of the juvenile court is never presumed, we will not "set aside" the juvenile court's judgment unless it "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.) Here, it has not.

We conclude remand is not warranted because there is no evidence that N.Y. is an Indian child or that remand for further inquiry would lead to a different ICWA finding.

*Disposition*

The judgment (jurisdiction and disposition findings and orders) is affirmed.

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:


        GILBERT, P. J.


        BALTODANO, J.

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rachel Van Mullem, County Counsel, Jennifer J. Lee, Deputy County Counsel, for Plaintiff and Respondent.