Filed 12/18/23  In re L.H. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re L.H., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B328256 (Super. Ct. Nos.: 22JV00100, 22JV00101, 22JV00102, 22JV00103) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.W., et al.,<br><br>    Defendants and Appellants. | |

M.W. (mother) and K.H. (father) appeal from the juvenile court's orders terminating parental rights to their four minor children and selecting adoption as the permanent plan.  (Welf. &

Inst. Code, § 366.26.)[1]  Mother's sole contention, joined by father, is that the Santa Barbara County Child Welfare Services ("CWS") and the juvenile court failed to comply with the statutory requirements for adequate inquiry whether the children are or may be Indian children pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C., § 1901 et seq.) and related California law, necessitating remand.[2]  We affirm.

*Facts and Procedural History*

Mother and father have four children: L.H. (born January 2017), A.H. (born February 2018), L.J.H. (born July 2019), and O.H. (born September 2020).  In March 2022, all four children were detained pursuant to a protective custody warrant following concerns about the parents' domestic violence and substance abuse.  The protective custody warrants for the children listed their race as American Indian.

CWS filed section 300 petitions on behalf of all four children containing allegations related to parents' domestic violence, father's violation of a restraining order that was issued due to previous domestic violence, mother's methamphetamine use, both parents' previous child welfare history, and both parents' criminal history.  The petitions each included an ICWA-010(A) form stating that neither parent provided the child

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

welfare worker with any reason to believe the children are or may be Indian children.

At the detention hearing, both parents denied Native American heritage. Father submitted an ICWA-020 form stating that none of the enumerated indicators of Indian status applied. CWS prepared a detention report and indicated that father told a child welfare worker that paternal grandmother claimed she had Native American ancestry, but father did not know of any tribal affiliation. The report also indicated mother denied having any known Native American ancestry.

In April 2022, at the jurisdiction and disposition hearing, the juvenile court stated it was prepared to make a finding that ICWA did not apply. County counsel reminded the juvenile court that father claimed he had "ancestry through paternal grandmother of an unknown tribe." County counsel also stated that CWS would continue its inquiry and would request an updated finding if additional information was found. The juvenile court found the allegations of the amended petition to be true, ordered the children removed from parents' custody, and ordered CWS to provide reunification services for both parents. The juvenile court's written findings and orders reflect its finding that ICWA does not apply.

In December 2022, at the six-month status review hearing, the juvenile court found the parents failed to substantially comply with the case plan, terminated reunification services, and set the matter for a permanency planning hearing pursuant to section 366.26.

In March 2023, CWS filed an addendum report, which included an ICWA matrix documenting the agency's inquiries as to each parent, as well as paternal aunt who denied any Native

American ancestry in her family. The report also indicated that CWS located an obituary for paternal grandmother who passed away in 2012.

In April 2023, at the section 366.26 hearing, the juvenile court found there was no reason to believe ICWA applied based on the further inquiry conducted by CWS. After a contested hearing, the juvenile court terminated parental rights and ordered adoption as the children's permanent plan.

*ICWA Inquiry*

Mother and father contend the orders terminating their parental rights should be conditionally affirmed and the matter remanded to the juvenile court because CWS failed to make an adequate initial inquiry whether the children are or may be Indian children.

We review the juvenile court's ICWA findings for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4) & (8); § 224.1, subd. (a).) The juvenile court and the county welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)

"'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to

4

provide formal ICWA notice.""" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire begins with the initial contact and obligates the juvenile court and the county welfare department to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child. (§ 224.2, subds. (a)-(c).)

Relying on *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743, and *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572, CWS contends it had no duty to inquire of extended family members about any Indian ancestry because the children were detained on a protective custody warrant pursuant to section 340, not section 306, which is the prerequisite to the section 224.2, subdivision (b) extended family member inquiry requirement. (See *Robert F.*, at pp. 500, 504, citing *In re Adrian L.* (2022) 86 Cal.App.5th 342 (conc. opn. of Kelley, J.); *Ja.O.*, at p. 679; *In re Andres R.* (2023) 94 Cal.App.5th 828, review granted Nov. 15, 2023, S282054.)

Recently, however, the court in *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*), review granted Sept. 27, 2023, S281447, declined to follow *Robert F.* After a detailed review of the legislative history of section 224.2 and Assembly Bill No. 3176 (2017-2018 Reg. Sess.), the majority in *Delila D.* concluded, "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Delila D.*, at p. 962.)

As *Delila D.* explained, "[t]he goal of the initial inquiry is to determine whether ICWA's protections may apply to the proceeding, and the way a child is initially removed from home

5

has no bearing on the question of whether they may be an Indian child." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 962.)

We conclude *Delila D.*'s analysis is persuasive. As *Delila D.* explains, section 340 provides that when a child is taken from home by means of a warrant, the child must be "delivered to" the social worker. (§ 340, subd. (c).) In turn, section 306, subdivision (a)(1) authorizes the social worker to "[r]eceive" the child and "maintain" them in temporary custody, pending investigation. (*Ibid.*) And "because the department, not law enforcement, is charged with conducting the ICWA investigation in a dependency proceeding, it simply makes more sense that section 224.2(b) would tie the initial inquiry to when the child is *delivered to* the department under section 306, subdivision (a)(1) and not when they are *initially taken* from home under section 340." (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 971-973.)

Consequently, *Delila D.* concluded, "[t]here is no practical difference between children taken by warrant and those taken without a warrant, and so there is no reason to distinguish between them for ICWA inquiry purposes." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 972.)

Applying this analysis here, we conclude CWS had a duty to inquire of available extended family members whether the children are or may be Indian children. CWS contends it satisfied that requirement by inquiring of all relatives with whom it had contact.

Here, father told CWS that paternal grandmother claimed she had Native American ancestry but he did not know of any tribal affiliation. When CWS interviewed paternal aunt and inquired about Native American ancestry, she stated there was no Native American ancestry in her family. At the detention

6

hearing, both father and mother denied having any Native American heritage when asked by the juvenile court. Father also completed an ICWA-020 form indicating that none of the enumerated indicators of Indian status applied. There was no objection when the juvenile court found that ICWA did not apply.

Mother and father identify several extended family members that CWS should have attempted to locate and make inquiry, including maternal aunt, maternal grandmother, and paternal uncle. Mother's reply brief also lists paternal grandfather.

But there is no evidence that CWS ever had contact with these extended family members or that they were readily available. For example, CWS spoke to mother and inquired about maternal relatives as part of the agency's social study/family assessment and consideration of relative placements. Mother told CWS she had no relatives to consider for placement. She stated she was raised by her mother and stepfather and has a younger sister who lives in Texas, but mother did not know her contact information. Mother did provide CWS with maternal grandmother's contact information, but CWS was unable to reach maternal grandmother by phone and left a voicemail requesting a call back. There is no indication maternal grandmother ever returned CWS's call.

CWS also interviewed father as part of the agency's social study/family assessment. He stated that he has two older siblings who live in Lompoc. Father did not have a relationship with paternal grandfather, and paternal grandmother had passed away. When the agency asked about paternal relatives who could be contacted for possible placement, father referred CWS to paternal aunt but told the social worker that paternal uncle,

7

Kevin, "[h]as a disease and is dying" and could not be contacted. CWS conducted an internet search for paternal relatives and mailed an inquiry letter to seven possible relatives, including a relative named Kevin. There is no indication CWS received any response to the letters it sent.

Notwithstanding these facts, mother and father contend "nothing was documented about any inquiry of mother's extended family members and given father's information that paternal grandmother claimed Indian ancestry, the social worker should have made a greater attempt to flush out and report on the discrepant information they had about Indian ancestry on the paternal side."

These contentions are meritless. We recognize any investigation could always be more robust. However, the law requires a child services agency to make a "meaningful effort" to locate and interview available extended family members. It is not required to "cast about" for information or pursue unproductive investigative leads. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 709; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199; *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082 ["we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided"].)

Furthermore, there is no indication that mother and father's extended family members had "readily obtainable information" that would "shed meaningful light" on the children's Indian status such that the absence of inquiry was prejudicial. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 742, 744.)

No remand is warranted.  We will not "set aside" the juvenile court's judgment unless it "has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13.)  Here, it has not.

*Disposition*

The judgment (orders terminating parental rights and selecting adoption as the permanent plan) is affirmed.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, J.


We concur:


GILBERT, P. J.


CODY, J.

9

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant, M.W.

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant, K.H.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Snr. Deputy County Counsel, for Plaintiff and Respondent.